THE STATE OF IOWA, Appellee, v. EVAN THOMAS, Appellant.

Criminal law:  EVIDENCE:  LEADING QUESTIONS.  A cause will not be reversed upon the single ground that the trial court improperly permitted the asking of leading questions, especially in cases of embarrassment, reticence or dullness of the witness, unless there has been a manifest abuse of discretion.

Same:  ADMISSION OF FORMER EVIDENCE.  Where a part of the testimony given on the former trial, but could not be produced at the second trial, was read by the reporter at the instance of defendant, the state was entitled to the balance, for the same reason that the party against whom part of a conversation is admitted is entitled to have the remainder admitted.

Same:  EVIDENCE:  CORROBORATION.  Evidence that defendant, in a prosecution for seduction, waited upon the prosecutrix, was frequently with her upon the streets and other places at night, and that when told of her pregnant condition and her claim that he was the author to her shame, said that he was not trying to get away and aimed to make it right, was sufficient corroboration to take the case to the jury.

Same:  RE-OPENING CAUSE:  FURTHER EVIDENCE.  The court has power to allow a witness to be heard for the purpose of correcting his testimony at any time before the issues are submitted to the jury, and even during the closing argument to the jury.

Same:  INSTRUCTION:  CORROBORATION.  The instruction in this case that if there was evidence aside from that of the prosecutrix tending to show that defendant was on intimate terms with her, and that he conducted himself toward her as a lover or suitor, or caressed or manifested apparent affection for her, such facts were proper to be considered on the question of corroboration, was not so prejudicial, in that there was no evidence of caresses, as to require a reversal, even though the jury may not be presumed to have

observed the warning not to go beyond the evidence regarding these matters.

*Appeal from Page District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, DECEMBER 11, 1912.

THE defendant was convicted upon a charge of seduction, and appeals.—*Affirmed.*

*T. S. Stevens* and *Parslow & Peters*, for appellant.

*Geo. Cosson*, Attorney-General, and *John Fletcher*, Assistant Attorney-General, for the State.

WEAVER, J.—The defendant was indicted upon the charge of seducing one Lizzie Baetge, and in support of his appeal for a reversal of the judgment entered against him makes the following points:

I. In the examination of the complaining witness, she had said, in substance that she would have yielded to plaintiff's solicitation for intercourse even if he had not promised to marry her, but in further testifying, and in response to a direct question by the county attorney, she was permitted, over defendant's objection, to say that she did not yield until there was a promise of marriage. Error is assigned on the ground that such testimony was elicited by leading interrogatories by the prosecutor. The inquiry, as shown by the record, was undoubtedly leading, but we do not think there was reversible error in allowing it. Very few cases will be found where judgment has been reversed upon the single ground that the trial court improperly permitted counsel to put leading questions to a witness. It is safe to say that this is never done except in a very clear case of abuse of dis-

1. CRIMINAL LAW: evidence: leading questions.

cretion by the trial court.  It often happens because of the embarrassment or reticence or dullness of a witness, and especially in this class of cases, that direct and leading questions are necessary in order to elicit the information which such witness is able or believed to be able to give. The trial court is in a position to observe and know the circumstances as we cannot, and the presumption of judicial fairness and proper discretion will prevail unless there is a manifest showing to the contrary.  The record before us is not of that character, and the objection must be overruled. The rule here applied is too familiar to require a citation of authorities.

II.  One Spring, who had testified in the case on a former hearing, could not be produced on the last trial below, and, on the call of the defendant, the shorthand reporter took the stand and read to the jury from his notes of a former trial a part of Spring's testimony.  On the demand of the state, and over defendant's objection, the reporter was allowed to read the remainder of this witness' examination to the jury, and to this exception is taken.  We think the ruling was correct. The law applicable in such case is akin to that which permits a party against whom part of a conversation is given in evidence to have the remainder thereof admitted.  No authority holding otherwise is called to our attention.  We have examined the evidence of this witness as it is found in the record, and no material part of it seems to be so foreign to the matter called out by the defendant himself as to give him any just ground of complaint because of its introduction.

*2. SAME: admission of former evidence.*

III.  It is argued that there is no sufficient corroboration of the testimony of the complaining witness to justify submitting the question to the jury.  While the corroboration is not overwhelming, we think it is sufficient.  Corroboration in nearly all cases of this character is of necessity circumstantial only.

*3. SAME: evidence: corroboration.*

In this case the witness is supported in her claim that, at or about the time of the alleged offense, defendant waited upon her, was frequently in her company, attended her, and was upon the streets and other places together with her at night. When the complaining witness was found to be pregnant, and her friends called upon the defendant with reference to her claim that he was the author of her shame, he said he was not trying to get away and would make it right, or that he "aimed to make it right." Corroboration of the character we have above described was held by this court sufficient to take the case to the jury in *State v. Smith,* 84 Iowa, 522; *State v. McClintic,* 73 Iowa, 663; *State v. Wells,* 48 Iowa, 672. It may also here be said that for reasons already stated, defendant's claim that upon the whole case the testimony is insufficient to sustain the verdict cannot be upheld.

IV. The next point and the one on which counsel most vigorously contend for a reversal has reference to a somewhat singular episode attending the submission of the case. It appeared in evidence that the complaining witness gave birth to a child on August 29, 1910. According to her story, her pregnancy resulted from intercourse with defendant which occurred first on November 14, 1909, and was repeated at various times after that date. On the part of the defendant, it was claimed that on the evening of November 26, 1909, a date substantially nine months before the birth of her child, the complaining witness attended a "box social" at a local schoolhouse in company with another young man, one Brokaw, and that they went away from the schoolhouse together and alone. Their presence at the box social was testified to by several witnesses, as was the fact that about the same time Brokaw had accompanied the girl to one or more other entertainments. To fix the date of this social, the school-teacher, Mrs. Hobson, having charge of the affair, was called as a witness and testified that it occurred on November 26, 1909, and

4. SAME: re-opening cause: further evidence.

that she was able to fix the date with exactness because she deposited the proceeds of the social in a bank on the following day, and the entry of the deposit in her passbook was dated November 27, 1909. No other witness seemed to be able to speak of the true date with the same degree of certainty; and, as the candor of Mrs. Hobson was not open to question, counsel for the defense naturally made this item of evidence a leading topic of discussion in their address to the jury, and argued therefrom that the pregnancy of the complaining witness and birth of her child should be attributed to her association with Brokaw rather than the defendant. During the closing argument for the state, it was announced to the court that Mrs. Hobson desired leave to correct her testimony, and over the objection of the defendant she was permitted to do so. She then testified that the true date of the social was October 29th and not November 26th. She explained the confusion and mistake by saying that, while it was true that she took the money to the bank on the day following the social, she then took a certificate of deposit for it, and did not have it transferred to her open account and entered upon her passbook until the later date. In giving her first testimony she did not recall the incident of taking the certificate of deposit, and had been misled by the book entry. After receiving this testimony, the court reopened the case for argument on behalf of the defendant, and permitted his counsel to again address the jury. It is insisted that there was error in allowing such correction to be made. Counsel concede that the witness acted in perfect good faith, and that she was doubtless mistaken in her first statement of the date; but it is said that, the defense having been misled into laying great stress upon the supposed fact and arguing it to the jury as making it extremely probable that another person than defendant was the father of the child, the subsequent correction of the evidence must have had great, if not decisive, effect in influencing a verdict of guilty. There is no doubt counsel offered the original testi-

mony in entire good faith, and they were justified in regarding the point so made as one having direct tendency to discredit the case of the state. It may well be believed, also, that its subsequent correction was a serious blow to the defense, and had more or less weight in the deliberations of the jury. But it must not be forgotten that the primary purpose of the trial was neither the acquittal nor the conviction of the defendant, but to ascertain with the requisite degree of certainty the truth of the matter charged in the indictment. To that end, as a general rule, all competent and material evidence was admissible. If the case had not reached a stage in the procedure where the court was without authority to permit it to be made, the correction of a mistake upon a material matter of evidence is so manifestly in accord with the very purpose for which courts of justice have been created that its propriety ought not to be considered open to question. No man ought to be convicted upon false or mistaken testimony. It is equally true that no man on trial for crime should secure an acquittal upon testimony of that character where the mistake is discovered before the case is closed and submitted. That the court had jurisdiction and authority to allow the witness to be heard at any time before the issues were submitted to the jury there can be no doubt. It is expressly provided for by statute (Code, section 3719), and even in the absence of any statute we see no tenable ground for denying the existence of inherent power in the court to make such order in the furtherance of justice. *State v. Shean*, 32 Iowa, 88; *Darland v. Rosencrans*, 56 Iowa, 122; *Miller v. Insurance Co.*, 70 Iowa, 704.

5. The court, instructing the jury upon the subject of corroboration, said that evidence of mere opportunity to commit the offense was not sufficient to

5. SAME: instruction: corroboration.

satisfy the statute, but added that, if there was evidence before the jury outside of the testimony of the prosecuting witness tending to show that

defendant was on intimate terms with the girl and de-
meaned himself as her lover or suitor, or caressed her or
manifested apparent affection for her, such facts were proper
for consideration upon the matter of alleged corroboration.
This is said to be erroneous because there is no evidence of
any circumstances of the kind thus enumerated.    Except,
perhaps, as relates to the matter of caresses, there is suffi-
cient to justify the instruction.    It does appear from state-
ments of other witnesses'that defendant was waiting upon the
complainant, kept company with her, and attended her to
places of public amusement.    He was seeking her society and
favor.   His attentions were evidently sufficiently assiduous to
attract the notice of their mutual acquaintances, and we are
of the opinion that the jury would have been justified in find-
ing that his conduct was such as ordinarily marks the lover or
suitor.   The use by the court of the word "caresses" was per-
haps not well advised, but we think it involves no reversible
error.   The clause is introduced by the expression, "if there is
evidence," and the jury is thereby warned that it is not at
liberty to go beyond the facts established by the testimony.
We may reasonably assume that the jury obeyed the court's
instruction.   Moreover, if it be denied that this is an allow-
able presumption, we are inclined to say that a single verbal
error of that kind worked no conceivable prejudice to the
defendant, and will not justify the ordering of a new trial.
The case seems to have been fairly tried, and we find no cause
for reversal.

The judgment below is therefore *Affirmed.*