STATE OF IOWA, Appellee, v. LOUIS NAGEL, Appellant.

CRIMINAL LAW: Nonprejudicial Opening Statement. It is not reversible error for the county attorney to assert, in his opening statement in the trial of a charge of perjury, that the accused had been indicted for a certain other offense which was involved in the transaction out of which the perjury charge grew.

CRIMINAL LAW: Right of Accused to Confront Witness. An accused who has been confronted by a witness on one trial may not, on a retrial, when the personal presence of the witness cannot be had, successfully contest the introduction of a transcript of the witness' testimony. (Sec. 245-a, Code Supp., 1913.)

**WITNESSES:** Scope of Examination. Prejudicial error does not
3  result from the curtailment of an examination relative to matters bearing on credibility, when the matters have been elsewhere fairly and substantially brought out. So held as to an inquiry as to the quantity of liquors possessed by a party, and as to the extent of intoxication.

**CRIMINAL LAW:** Improper Argument Cured by Withdrawal. An
4  unwarranted deduction, drawn by the county attorney in argument from what he claimed the defendant's attorney had said to the jury in argument, to the effect that defendant's counsel knew that his client was guilty, is non-prejudicial when it appears that the unwarranted statement was promptly condemned by the court and promptly withdrawn by the county attorney.

EVANS and SALINGER, JJ., dissent as to the effect of the language used by the county attorney.

*Appeal from Guthrie District Court.*—J. H. APPLEGATE,
Judge.

JANUARY 20, 1919.

REHEARING DENIED APRIL 10, 1919.

THE defendant was convicted of the crime of perjury, and appeals.—*Affirmed.*

*W. D. Milligan,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,* Assistant Attorney General, for appellee.

LADD, C. J.—I.   The accused is charged in the indictment with having sworn falsely before the grand jury, in an investigation then pending wherein Daisy Craver and May Lynch also were charged with having committed perjury, in that he then swore that he was not present at certain times and places with said women, whereas he was, in fact, then and there present; that he had not seen said women before that night, and started from the fair ground at about 11 o'clock, and found his car, lighted, standing in the road; that he didn't know that the said women were there

with the boys, and other details not necessary to enumerate, whereas he had seen them before that night, did not so state, and knew they were there with said boys, etc.

The evidence bearing upon the defendant's guilt was in sharp conflict, and for this reason the verdict ought not to be disturbed.

II.   In his opening statement, the county attorney said:

"This matter was investigated by the grand jury,—I do not know just what term,—and an indictment was brought against Mr. Nagel for soliciting for the purpose of prostitution.  (Counsel for defendant objected to this as incompetent, irrelevant, and immaterial to the presentation.  Court: The court is unable to say at this time just how much of this is necessary, to the end that the jury may understand the connection.  The fact that he was so indicted would have no bearing on the guilt or innocence of the defendant in this case, except as it may be historical.)"

1. CRIMINAL LAW: nonprejudicial opening statement.

The offense mentioned rested on the transaction concerning which defendant is alleged to have testified falsely, and in the prosecution of which, as we understand the record, these women were accused before the grand jury, and in the investigation of which the accused is said to have committed perjury.  If so, the recital was not improper, but necessary to a full understanding of the situation by the jury.  Other statements were in line with the above, and for like reason were not objectionable.

III.   This was the third trial of the case.  On a former trial, Marion Rape testified; but, though subpoenaed at this trial, failed to appear, being detained at Camp Grant, near Rockford, Illinois.  The State introduced and read in evidence a transcript of his evidence given at the previous trial, the court overruling an objection as incompetent, immaterial, and irrelevant, and for that the defendant is not

2. CRIMINAL LAW: right of accused to confront witness.

now confronted by the witness on this trial. The objection was overruled, and rightly so. See *State v. Brown*, 152 Iowa 427, where the subject is fully considered, and *State v. Thomas*, 158 Iowa 687.

IV. One Shroyer, having testified to what occurred near the cornfield, and that he, Rape, and others "were drinking, going out, and had whisky with us," was asked,

3. WITNESSES: scope of examination.

"How much did Rape have?" Objection as immaterial and incompetent was sustained. The ruling might well have been otherwise; but, as he subsequently testified that "Rape had liquor," there was no prejudice, the fact of carrying liquor, rather than the amount, being significant. The same witness was asked whether he was intoxicated.

"A. I do not know what you call intoxicated. Q. Were you under the influence of liquor? A. I had been drinking,—yes, sir. Q. You know when you are intoxicated, don't you? A. Well, it is hard to tell. Lots of people think a man is intoxicated when he is not, and lots think he is not when he is. Q. Was your judgment impaired? (Objection as incompetent was sustained)."

The only possible bearing of such inquiry was on the credibility of the witness. How far an examination of this kind shall be pursued is largely a matter of discretion, and we are of opinion, in view of the previous answers of the witness, that there was no abuse thereof in limiting it by excluding further inquiry along the line being pursued. A somewhat similar ruling on a question propounded to Badger has our approval.

V. After the evidence had been introduced, the county attorney, in his opening argument to the jury, said that:

"Deep down in Mr. Milligan's heart, he knows the defendant is guilty, and I will now tell you how

4. CRIMINAL LAW: improper argument cured by withdrawal.

he has said it to me." Here, counsel for defendant objected to "this language as improper, and as misconduct of counsel, and

prejudicial to defendant, and a statement that no prosecuting attorney should make, in addressing a jury in a criminal case. Mr. Taylor (county attorney) : I want to say that I added to that, 'and how he told it to the jury,' and I intended to make reference to something that occurred before the court in this trial. Mr. Milligan: I deny that he made that statement. Mr. Taylor: The jury will know whether I did or not. Court: The court will say this, to complete the record, that Mr. Taylor did make the statement 'that Mr. Milligan knew deep down in his heart that Mr. Nagel, this defendant, was guilty,' and then went on to say 'and he said it to me,' or in substance that, and just at that point he was interrupted, so that the court is unable to say what further remarks the county attorney was about to make to the jury. To the end, therefore, that he may be put in the attitude of what he intended to say, he will be permitted by the court to finish it, and I will pass on the matter then. Mr. Taylor: I will state that my recollection of what I said was that I will tell the jury how he told it to me and how he told it to you. Court: You may finish your statement. Mr. Taylor: In Mr. Milligan's opening statement to you gentlemen, he did not say to you that the facts are so and so, and defendant will prove so and so, he said to you gentlemen that Mr. Nagel's story is so and so. That is what I meant to say. Court: Now, gentlemen of the jury, I think Mr. Taylor should withdraw from his statement the statement that he made that Mr. Milligan knows, deep down in his heart, that his client is guilty. I think that is not a proper statement for the county attorney to make, and in your consideration of this case, you gentlemen ought not give it any weight at all. Mr. Taylor: Upon the suggestion of the court, I will withdraw it. Court: The other statement, I think, is not out of the road in the argument. Mr. Taylor: I will withdraw it; I will say frankly I did not know it was improper.

Court: I hardly think it proper for the jury to take it into consideration."

It will be observed that the court admonished the jury to take no heed of what Taylor said of what Milligan believed in his heart, and that Taylor withdrew that part of the statement. To charge counsel for the other side with want of sincerity in presenting such defense as the accused may have, does not rise to the dignity of argument, would be unfair, and ought never to be indulged in; but we think that, even if what Taylor said be construed as so charging, the court's condemnation, together with the prompt withdrawal of what was said, precluded all possible prejudice. We entertain more doubt as to what followed: "And I will tell you how he said it to me." This plainly indicated that something was to be added, and, though he was then interrupted, the court allowed the county attorney to add what he was about to say, and this is what it was:

"And I will tell the jury how he told it to me and how he told it to you. In Mr. Milligan's opening statement to you, gentlemen, he did not say to you that the facts are so and so and defendant will prove so and so. He said to you gentlemen that Mr. Nagel's story is so and so."

This statement also was withdrawn, and the court held it not proper for the jury's consideration.

The jury could not have been misled by what occurred. The county attorney did not pretend to have any ground for what he said of Milligan, other than that the latter, in making the opening statement, did not say what the facts were, and he would prove, but merely declared what defendant's story would be. This distinction was too fine on which to deduce what Milligan may have known down deep in his heart, and, of course, was not good argument. Nor would any juror of fair intelligence be likely to have so regarded it. The opening statement of defendant's counsel, however, was made in the orderly course of the trial, and was fair

matter of comment in the arguments following the intro-
duction of evidence. It was made to the jury, and apprised
the county attorney, as well as the court, of the nature of
the defense to be interposed. To say, then, that defendant's
attorney said what he did say to the jury and to the county
attorney was not aside from the fact, and the only error
was in the latter's deduction of the situation in Milligan's
heart. What counsel for the defense may have believed con-
cerning defendant's guilt or innocence was entirely imma-
terial, and had, and should have had, no bearing on the
case. Nor do we think it did, for that no sensible juror would
have drawn the inference the county attorney suggested, and
the latter withdrew the same, and the court admonished the
jury to give the matter no consideration.

Other rulings are not fairly debatable, and for this rea-
son, are approved without discussion.—*Affirmed.*

GAYNOR, PRESTON, and STEVENS, JJ., concur.

EVANS, J. (dissenting). I cannot agree with Division
V of the opinion. In his address to the jury, the county at-
torney said:

(1)  "Deep down in Mr. Milligan's heart, he knows the
defendant is guilty, and (2) I will tell you how he has said
it to me."

On objection by defendant, the court struck out part
(1) and approved part (2) as "not out of the road" [way].

I think part (2) was even more objectionable than the
first part, and should have been condemned, promptly and
unequivocally. The attempted explanation by the county at-
torney of what he intended to say, availed nothing and ex-
plained nothing. The attempted explanation was itself im-
proper, and should not have been permitted. It only intensi-
fied the prejudice. No explanation could justify the state-
ment actually made. Later, the explanation was itself with-
drawn by the county attorney. But the objectionable state-
ment remained in the record, with the express approval of

the court.   Such statement implied that the attorney for
defendant had privately confided to the county attorney his
conviction of his client's guilt.

If it were open to us to presume a finding of fact in sup-
port of the ruling of the court, we might presume that the
defendant failed to satisfy the court that the statement ob-
jected to was, in fact, made.   But the court expressly found,
as a fact, that such statement was made.   We are compelled,
therefore, either to approve or to disapprove as prejudicial
such statement by the county attorney.

SALINGER, J., concurs in this dissent.