Glenn v. Gleason et al., Ex'rs,

GLENN v. GLEASON ET AL., EX'RS.

1. **Bill of Exceptions:** SKELETON SUFFICIENT. Where a bill of exceptions when signed by the judge was a skeleton in form, but unmistakably referred to the short-hand reporter's notes of the evidence, and directed the evidence thus taken to be inserted, *held* sufficient.

2. **Deposition:** AGREEMENT TO TAKE LIMITED TO PERSONS NAMED. Where the parties to a cause stipulated in writing that the deposition of *S. M. K.* should be taken in behalf of the plaintiff before a certain notary public, but the notary took and returned the deposition of *Sallie E. McK.*, *held* that the deposition was properly suppressed on motion of defendants.

3. **Executors:** ACTION AGAINST: EVIDENCE: CROSS-EXAMINATION. Where, in an action against executors on certain promissory notes, the plaintiff was allowed, without objection, to testify that defendants' testate signed the notes, which were thereby admitted in evidence, making a *prima facie* case for plaintiff, it was competent for the defendants to cross-examine the plaintiff as to where, when, under what circumstances, and for what consideration, the notes were signed.

4. **Evidence:** LETTERS: EXAMINATION OF WRITER AS TO CONTENTS. Where letters are present in court, they are the best evidence of their contents; and it was error for the court to permit counsel to show

plaintiff certain letters, asking whether the writing and signature were hers, and, upon her saying that she thought they were, to read certain clauses from the letters and then ask her whether she had written those clauses. And, where such erroneous proceeding evidently tended to embarrass and confuse the plaintiff, and to prejudice her in the minds of the jury, the error was not cured by afterward reading the whole of the letters to the jury.

## *Appeal from Mahaska Circuit Court.*

### WEDNESDAY, APRIL 18.

THIS is a proceeding in the circuit court to establish certain claims against the estate of Jonathan Atkins, deceased. The claims consist of four prommissory notes, which purport to have been executed by Atkins, and payable to the order of the plaintiff, and amounting in the aggregate to more than $4,000 dollars, without interest. There was a trial by jury, which resulted in a verdict and judgment for defendants. Plaintiff appeals.

*Lafferty & Johnson, L. C. Blanchard* and *Jno. A. Hoff-man,* for appellant.

*M. E. Cutts, Jno. F. Lacy, H. W. Gleason* and *O. C. G. Phillips,* for appellee.

ROTHROCK, J.—I. Counsel for appellee make a question as to the sufficiency of the bill of exceptions, which embodies the evidence taken upon the trial. We deem it sufficient to say that this objection is not well taken. The bill of exceptions when signed by the judge was a skeleton in form, but it unmistakably referred to the short-hand reporter's notes of the evidence, and directed the evidence thus taken to be inserted. There was no uncertainty as to the source from which the clerk should make up the record.

1. BILL OF EXCEPTIONS: skeleton sufficient.

II. There were no pleadings in the case, other than the

notes in controversy, duly sworn to as required by law. The defendants refused to allow the claims, but filed no answer or other pleading in the case. Some time before the trial, a written agreement was entered into by the counsel in the case, in which it was stipulated that the deposition of S. M. Kinne should be taken in behalf of the plaintiff before any notary public in and for the county of Harper, in the state of Kansas. In pursuance of this agreement, the deposition of Sallie E. McKinne was taken before G. W. Apply, a notary public, and filed in the case. The defendants moved to suppress this deposition upon the ground that no agreement was made to take the deposition of Sallie E. McKinne, and upon the further ground that the notary public before whom the deposition was taken was an attorney for the plaintiff in the action. The motion was sustained, and the appellant assigns this ruling of the court as error. It appears from the abstract that there was quite an extended investigation in the court below upon the question whether or not Apply was in fact employed as an attorney in the case by the plaintiff. Witnesses were called and examined and cross-examined, and letters were produced in evidence. Whether such a proceeding is authorized in any case, we need not determine. We cannot, however, refrain from saying, that we do not understand how the fact that the plaintiff had employed Apply could be proved by what Apply said about it in letters written and addressed to others. But, passing this question, we think the motion was correctly sustained, upon the ground that there was neither agreement nor notice to take the deposition of Sallie E. McKinne. The agreement was that the deposition of S. M. Kinne should be taken, and it surely ought not to be claimed that defendants were bound to take notice that those two names described the same person. See *Strayer v. Wilson*, 54 Iowa, 565:

III. At the commencement of the trial, the plaintiff offered

*Margin note:* 2. DEPOSITIONS: agreement to take limited to persons named.

in evidence the four promissory notes in controversy. The defendants objected to the introduction of the notes, for the reason that it had not been shown that they were executed by Jonathan Atkins, deceased. The objection was sustained, and thereupon the plaintiff was called as a witness, and in her examination in chief she testified as follows:

3. EXECUTORS: action ag'nst: evidence: cross examination.

"I had known Jonathan Atkins ever since I can remember; he was my uncle by marriage. I was familiar with his handwriting and signature; he and I corresponded ever since I left Oskaloosa, up to his death. Jonathan Atkins' signature is attached to the four notes sued on; all the signatures are his genuine signature. Jonathan Atkins signed the note sued on, dated Oskaloosa, Iowa, December 22, 1874, for $987; he also signed the note sued on, dated Bloomfield, Iowa, April 27, 1876, payable to me, for $1,000; he also signed the note sued on, dated Oskaloosa, September 4, 1876, for $229, payable to me; he also signed the note sued on, dated Oskaloosa, Iowa, September 4, 1876, payable to me, for $1,000; I am plaintiff in this action."

Whether or not the plaintiff's counsel intended by this testimony to call for more than mere proof of the handwriting of Atkins, does not very clearly appear from the testimony itself. If more than this was intended, the testimony was incompetent, under § 3639 of the Code, as being in the nature of personal transactions or communications between the plaintiff and Atkins. No objection, however, was made to the testimony by the defendants, and, in the cross-examination, the testimony in chief was treated as though the witness had sworn that, as a matter of fact, Atkins signed the notes in the presence of the plaintiff.

The cross-examination of the plaintiff developed the entire grounds of the defense to the notes. The plaintiff, at every stage of this examination, objected to the same, except to what transpired at the alleged time of the signing of the notes. The objections were made upon the ground that all inquiry

with reference to the consideration of the notes, and the circumstances which led to the execution of the same, was not proper cross-examination. All of these objections were overruled, and in the cross-examination all the transactions between the parties to the alleged notes were fully inquired into, including many collateral facts and circumstances.

It is contended that the whole line of cross-examination was a gross violation of the rule that the cross-examination of a witness should be confined to the matters testified to in the examination in chief. The rule upon this subject is as follows: "A party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination, and if he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. Greenleaf on Ev., Vol. 1, Sec. 445; *Phil. & Trenton R. R. Co. v. Stimpson*, 14 Peters, 448; *Houghton v. Jones*, 1 Wallace, 702." As to what are and what are not circumstances connected with the testimony in chief, is sometimes very difficult of determination, owing to the remote connection between the direct examination and the facts sought to be elicited by the cross-examination. And unless a trial court should so far overstep the bounds as to admit that in cross-examination which clearly has no connection with the direct testimony, an appellate court would not be justified in reversing a judgment for such cause, especially where the cross-examination is upon facts competent to be proved under the issues in the case. In such questions, very much must be left to the discretion of the trial court.

In the case of *Davis v. Simma*, 14 Iowa, 154, where, on the trial of an action of trespass, a witness introduced by the plaintiff was interrogated as to the possession of the property in controversy, for the purpose of showing *prima facie* ownership, it was held proper to interrogate him upon cross-examination as to the ownership. In the case at bar, the witness testified that Atkins signed the notes. This, under the

ruling of the court that the notes were not admissible in evidence without such proof, made a *prima facie* case for the plaintiff, because, if the notes were signed, they imported a consideration. Now appellant concedes, by the objection to the cross-examination, that it was competent to inquire into the facts and circumstances attending the signing of the notes, and, of course, the right of cross-examination would extend to any facts which would tend to rebut the fact that the notes were signed by Atkins. It was, therefore, competent for the defendants to show by the witness, if they could do so, that there was no consideration for the notes, because that fact, in a remote degree at least, bore upon the question as to whether the notes were in fact executed by Atkins. We can see no valid objection against asking the witness where, when, and under what circumstances the notes were signed, and why they were signed by Atkins.

IV. In the course of the cross-examination of the plaintiff, her attention was called to certain letters said to have been written and signed by her. As to one of these letters she was asked this question: "Examine that writing and signature, and see if that is your writing or not?" Thereupon her counsel requested "that the witness have the privilege of examining the contents of the letter, before being required to answer if it was her signature." This request was refused, and plaintiff excepted. The witness answered that she would not be positive that the signatures to the letters were her signatures. She stated at one time that she thought that the signature to one of them was her own signature, but was not certain. Thereupon counsel for defendants proceeded to read certain clauses in the letters, and asked the witness if she had written them.

4. EVIDENCE: letters: examination of writer as to contents.

The following are examples of the questions asked the witness as to the contents of these letters: "Did you in the same letter say to him, 'Don't let them draw anything out of you that will conflict with the statement I give you.' 'No one to love them, none to caress them'—did you write that?"

The counsel for the plaintiff protested against this mode of examination of the witness, for the reason that the letters were the best evidence of their contents, and the witness should not be compelled to give her recollection of what she had written, when the letters in question were in court. The court overruled the objections, and permitted counsel to proceed, and the witness answered all the interrogatories in effect that she did not remember. In overruling this objection, and permitting this course to be pursued in the examination of the witness, we think the court erred. In Vol. I., Sec. 463, Greenleaf on Evidence, it is said: "The counsel will not be permitted to represent, in the statement of a question, the contents of a letter, and to ask the witness whether he wrote a letter to any person with such contents, or contents to the like effect, without having first shown to the witness the letter, and having asked him whether he wrote that letter, and his admitting that he wrote it. For the contents of every written paper, according to the ordinary and well established rules of evidence, are to be proved by the paper itself, and that alone, if in existence.. But it is not required that the whole paper should be shown to the witness. Two or three lines only of a letter may be exhibited to him, and he may be asked whether he wrote the part exhibited. If he denies, or does not admit, that he wrote that part, he cannot be examined as to the contents of such letter, for the reason already given; nor is the opposite counsel entitled in that case to look at the paper. And if he admits the letter to be his writing, he cannot be asked whether statements, such as the counsel may suggest, are contained in it, but the whole letter must be read as the only competent evidence of that fact    *    *    *    * ."

That the course of examination pursued in this case was in plain violation of these rules, must be conceded. It is plain from the mere reading of the record that it tended to embarrass and confuse the witness, and prejudice her in the minds of the jury. The fact that the letters were subsequently read in evidence to the jury does not, in our judgment, cure

the error.   It might be different, if the court had not already gone to the very verge in the latitude allowed in cross-examination.   Indeed, the defendants were allowed in the cross-examination of this witness to develop their whole defense.   We have held that the court did not abuse its discretion in this regard, but we cannot say that this last departure from well established rules was error without prejudice.

V.   We think there was also error in permitting the defendant, Gleason, to testify as to the statements of the deceased; and that there was no proper ground shown for the admission in evidence of the ledger of the deceased.   The length of this opinion precludes us from entering upon a. discussion of these errors.   We discover no other error in the case.

REVERSED.