THE STATE OF IOWA, Appellee, v. CLYDE HARVEY & HATTIE HARVEY, Appellants.

**Criminal law:** JOINT PROSECUTION: INSTRUCTION. On the prosecution of two persons jointly charged with crime, an instruction that there could be no conviction unless it appeared that the "defendants or one of them" committed the crime was erroneous, as under such charge proof of the guilt of one would justify a conviction of both; and especially was this true where defendants were husband and wife, as a presumption exists in favor of the wife.

**Arson:** MALICE. Malice is an essential element in the crime of arson.

**Instructions:** DEFINITION OF TERMS. Where "willfulness" and "malice" are essential elements of a crime, the court should define the terms for the guidance of the jury.

**Best evidence.** On a prosecution for arson, oral evidence of the contents of a policy covering the burned property, was objectionable as not the best evidence, no reason being given for not producing the policy.

**Arson:** EVIDENCE: ADMISSIBILITY. Where the state, in seeking to show a motive for the crime of arson, proved by the agent that he wrote the policy on the burned building, it was error to strike from the record his statements, on cross-examination, that he took the usual precaution not to overinsure and that he considered it a good risk.

**Same.** On a prosecution for arson, the testimony of a witness that he could have saved the lives of persons burned in the fire had he known they were there, was prejudicial error.

**Same.** On a prosecution for the crime of arson, committed in the night time, the personal appearance of the defendant at the time of the fire was proper to be shown, where it appeared that the burned building was her residence.

*Appeal from Carroll District Court.*—HON. F. M. POWERS, Judge.

MONDAY, APRIL 9, 1906.

·THE defendants were convicted on a charge of arson, and appeal.— *Reversed* and *remanded.*

*M. W. Beach* and *Sharp & Percy,* for appellants.

*Chas. W. Mullan,* Attorney General, and *L. De Graff,* Assistant Attorney General, for the State.

WEAVER, J.— The defendants are husband and wife, and, at the date of the alleged crime, were about twenty-three years of age. A short time after their marriage, and a few months before the date of the alleged crime, they purchased a restaurant business conducted in a frame building on the principal street of Glidden, Iowa. They kept a small stock of restaurant goods, and served meals to transients and boarders, and also had a few beds for the use of lodgers. The former owner of the business had insured the goods owned and used on the premises for $800, which amount was thereafter increased by the defendants to $900. It is not seriously urged on part of the state that the property was overinsured. The building was an old wooden frame, and by its side, with but a narrow space between, was another old frame building owned by one Ford. On the night of August 6, 1904, there were in the restaurant building the defendants, a servant girl, and two lodgers, spoken of in the record as the Hobbs

boys.  All had retired; the defendants occupying a room on the ground floor, and the servant and the Hobbs boys occupying the rooms upstairs.  Soon after midnight a citizen of the town discovered a fire breaking out in the narrow space between the restaurant and the Ford building; but the evidence is neither conclusive nor clear as to whether it had broken out through the wall of one of these structures or had originated on the outside.  About the time the alarm was given the defendants claim to have been awakened and, discovering the fire, sprang from bed, and, after hastily putting on a few garments, picked up a trunk which contained clothing and other property and with it escaped through the bedroom window.  The husband then went up an outside stairway to the second story and aroused the servant, but says that the fire had made such progress that he could not go farther, but shouted an alarm to the lodgers.  Coming back he was told by some one in the crowd that the Hobbs boys, or one of them, had been seen; but this proved to be a mistake, and the unfortunate young men were burned in the building.  Several circumstances served to excite the suspicion that defendants had themselves destroyed the building, with the result that they were jointly indicted for the supposed crime and put on trial.  Having been convicted and sentenced to the penitentiary for a term of three years, they appeal.  Many exceptions are taken to the rulings of the trial court and to the giving and refusing of instructions, but we shall not extend this opinion to discuss them all.

I. Among other things the court charged the jury as follows: " Before you can find the defendants guilty, the state must prove, beyond a reasonable doubt (1) that in the

1. CRIMINAL LAW: joint prosecution: instruction.

nighttime about August 6, 1904, a certain inhabited building of Clyde Harvey, situated in Glidden, Carroll county, Iowa, was burned; (2) that the burning was not the result of an accident; (3) that the defendants, or one of them, willfully, feloniously, and maliciously set said building on fire.  And if the state

has failed to establish any one of these facts, beyond a reasonable doubt, then you should acquit the defendants." The appellants complain that the jury were here told, or at least that the jurors could readily so interpret the language of the court, that proof beyond reasonable doubt that one of them feloniously and maliciously set the fire would justify the conviction of both of the crime charged against them. In our judgment the criticism is warranted. The instruction states three essential things which must be shown before the " defendants " (speaking of them jointly) can be found guilty, and of these essentials one is said to be that " the defendants or one of them willfully, feloniously, and maliciously set said building on fire."

Counsel for the state attempt to justify the charge on the ground that the prosecution was based upon the theory that if any crime was committed it was accomplished by the co-operation of both defendants, and that the circumstances were such that of necessity both must be convicted or both must be acquitted. Such may have been the theory of the prosecutor, but it does not follow that he was entitled to have any such proposition submitted to the jury. It is too well established to justify argument that upon the trial of two defendants jointly charged with crime (except where from the very nature of the offense charged it must have been jointly committed, if at all), it is not within the province of the court to say to the jury that both must be convicted or both acquitted. 1 Wharton's Criminal Law, 693; *State v. McClintock,* 8 Iowa, 203; *McClellan v. State,* 53 Ala. 640.

It is very possible that the circumstances of a given case may be such that a verdict of guilty as to one of two defendants and of not guilty as to the other would be grossly unreasonable, and yet, if the case be not one for a directed verdict of acquittal as to one or both of the accused, the right of each to have the question of his individual guilt or innocence passed upon by the jury can not rightfully be denied. If the court had elsewhere in its charge stated to the jury the

rule of law to which we have adverted and explained its ap-
plication to the case on trial we could perhaps safely say that
the error in the paragraph under consideration was without
prejudice, but no such instruction was given, except as the
same might be inferred from the submission of blank forms
upon which a verdict of guilty as to one, and not guilty as to
the other defendant, could be returned. But the jury should
not be left to infer the proper rule in a matter of such prime
importance.

Moreover it is to be remembered that these defendants
are husband and wife and the law indulges a presumption
that the participation of a wife in the crime of her husband,
or the act of a wife in the commission of a crime in his
presence is the result of coercion on his part, and that she
is not legally chargeable with guilt until that presumption
has been removed by evidence tending to show her to have
acted of her own will and accord. *Com. v. Flaherty,* 140
Mass. 454 (5 N. E. 258) ; *State v. Fitzgerald,* 49 Iowa, 263 ;
*State v. Kelly,* 74 Iowa, 589 ; *State v. Williams,* 65 N. C.
398 ; *Goldstein v. People,* 82 N. Y. 231. It follows from
this rule that defendants would not necessarily be equals in
guilt even if the state had succeeded in proving that both
participated in the alleged criminal act.

II. The crime of arson, as defined by the statute, in-
volves the elements of both willfulness and malice. Code,
sections 4776, 4780. In stating to the jury the essential ma-
terial allegations of the indictment, which the
state was bound to prove in order to convict,
the trial court omitted the element of malice, and told the
jury the essential allegation in this respect was that the
building was burned willfuly and feloniously. As a new
trial must be ordered for other reasons it is not necessary for
us to decide whether the confusion or inconsistency here
noticed would require a reversal, but we call attention to it
in order that the objection may be avoided on another hear-
ing.

2. ARSON: malice.

It may be said, also that the court failed to define or explain the term " willfulness and malice." These words have come to have in law, meanings somewhat dissimilar from those which they bear in popular usage, and, in our judgment, the court should ordinarily define both willfulness and malice to the jury. It is true that the courts themselves find difficulty in stating satisfactory definitions of these terms, as well as in making perfectly clear the distinction between them, but we are not without precedents which are accepted as sufficient in all ordinary cases. *State v. Willing,* 129 Iowa, 72; *State v. Lightfoot,* 107 Iowa, 344; 19 Am. & Eng. Enc. Law (2d Ed.) 623; 30 Am. & Eng. Enc. Law (2d Ed.) 525.

*3. INSTRUCTIONS: definition of terms.*

III. The state produced as a witness an insurance agent who testified that he issued a policy of insurance to a former owner of the stock and household goods in the restaurant and renewal of said policy to the defendant Clyde Harvey, and over the objection of the defendant, and without showing any reason for not producing the instruments themselves, this witness was allowed to testify to their contents. The objections should have been sustained under the familiar rule which requires the best evidence obtainable, and the best and, ordinarily, the only competent evidence of the contents of a writing is the paper itself.

*4. BEST EVIDENCE.*

On cross-examination of this witness he testified that he took the usual precautions required by his company to ascertain the value of the property, and thought it a good risk and not overinsured. The answer was stricken out on motion of the state as immaterial, irrelevant, and not proper cross-examination. The ruling was erroneous. The state was attempting to show by this witness circumstances from which a motive for the alleged crime by the defendants could be inferred. The existence of that motive depended largely upon the relative value of the property to the amount of insurance. The agent

*5. ARSON: evidence: admissibility.*

was presumably a person of some experience in his business, he examined the property for the express purpose of preventing overinsurance and satisfied himself that there was none and that fact we think it was clearly competent and proper to bring out upon his cross-examination.

One Hagaman, a witness for the state, having testified that when he arrived at the fire it was already well under way and that when he met the Harveys they did not say anything about the Hobbs boys, he was then asked if he could have saved the boys had he known they were upstairs in the building, and over the objection of the appellants he was allowed to say that he could. These appellants were not on trial on charge of murdering the Hobbs boys. No suggestion is made by counsel that the crime of arson was committed to destroy the evidence of a more horrible crime. If any suspicion ever existed that these young men had been robbed by any one and the building burned to prevent detection of the offense, it had been effectually dissipated by the discovery, in the ashes near their bodies, of coins, watches, and other evidences that their valuables had not been abstracted, rendering such a conclusion highly improbable. Whether the witness could, or could not, have saved the unfortunate men after his arrival on the scene had no relevancy to the question whether the fire which then already enveloped the building had been set by the accused. The natural if not the inevitable effect of thus suggsting that these lives had been unnecessarily or negligently sacrificed, was to inflame the minds of the jurors to the serious prejudice of the parties on trial and the testimony should have been excluded. The prosecution is entitled to, and should be granted, the privilege of submitting to the jury every fact which by any fair intendment may serve to make clear the guilt or innocence of the accused person of the very crime with which he stands charged, but it is not entitled to cast human passion into the scale.

A woman who was present at the fire was allowed to

6. SAME.

testify that she saw the defendant Mrs. Harvey in the crowd,
and that her " hair was in perfect order."   The introduction
7. SAME.                of this evidence was assigned as error.   We
                      may assume that this testimony was offered and
admitted on the theory that a woman aroused from her sleep
by an alarm of fire would not stop to make an elaborate
toilet before jumping from the window.   The presumption
is by no means so conclusive as to have any great probative
value, but we think the court properly allowed it to go to
the jury for what it was worth.   Of other exceptions to
rulings upon the admission of testimony we may say they
are not well taken, or are so clearly governed by the con-
clusions we have already announced that it is not necessary
to dwell upon them.

   IV.  It is finally urged that the testimony is insufficient
to sustain a conviction and we are asked not only to reverse
the judgment on this ground, but to direct a dismissal of the
prosecution.   We have to concede that upon the record be-
fore us we have grave doubts whether there is any such
proof of the *corpus delicti* — the fact that the building was
feloniously set on fire by some person — as would justify the
court in permitting the judgment to stand; but, in view of
the necessity of a reversal upon other grounds and the pos-
sibility that upon another hearing other and different evi-
dence may be introduced, we are not inclined to do more
than to order a new trial.

   The judgment of the district court is therefore reversed,
and cause remanded for a new trial.— *Reversed.*