PEARL ENO, Appellee, v. ADAIR COUNTY MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 45355.

October 22, 1940.

Ed Fackler, Jr., for appellee.

Lee R. Watts, for appellant.

Bliss, J.—The policy sued upon was issued by the defendant to the plaintiff on June 22, 1929, and provided insurance for the property covered, against loss by fire and lightning, for a period of 10 years. The application was signed by the plaintiff by her husband, J. D. Eno. The buildings insured were on a farm owned by plaintiff, and one of the buildings was a barn. It was this building which was burned. In the application, the following appears:

"Item 37. Engine? No. Kind?...... Where?......"

The application contained the statement that the applicant would immediately notify the secretary of the defendant of any "new exposure that may increase the hazard," and the

further statement that the facts and circumstances set forth were true, and that the applicant would be governed by articles of incorporation and rules then in force. The policy contained copies of the application, the articles of incorporation, and the bylaws of the association. Section 11, of the latter, provided as follows:

"This Association shall not be liable for loss or damage which may occur under any of the following conditions: By design; culpable neglect of the insured; automobiles stored in barns; gasoline engines, or other implements or vehicles using gasoline or oil for fuel, operated in barns; * * * Any untrue statement in the application for insurance materially affecting the risk shall render the policy void."

Plaintiff's petition alleged the issuance of the policy; the total loss of the barn by fire on March 7, 1939; "that said loss did not originate by any act, design or procurement on the part of the plaintiff"; and, that due proof of loss for $1,000 was made, which defendant refused to pay. A copy of the policy was attached to the petition.

The answer of defendant admitted the execution of the policy, but denied that the copy attached to the petition was a full and true copy, and denied generally, except as admitted. It set out the portion of the application and policy, above quoted, and stated that plaintiff had violated these provisions by installing in the barn a gasoline engine which she used and operated therein without the knowledge or consent of defendant, and thereby constituted a new exposure that materially increased the hazard of insurance, and failed to notify the secretary of defendant of such facts, and that the loss sued upon was caused by the wrongful use and operation of said gasoline engine.

For reply the plaintiff alleged "that the use and occupancy of said barn, together with all of the installations therein, was known to the defendant at and prior to the time of the fire, that defendant accepted premiums for the insurance with full knowledge of all of the conditions concerning the hazards, use and occupancy of said barn and thereby waived any provisions of its policy regarding the same and defendant is estopped and barred in setting up defense on account thereof."

The record establishes that a gasoline engine had been installed in the barn and had been used to operate a milking machine, and that it was in the barn at the time of the fire. Just when it was installed does not appear. Plaintiff introduced no evidence to establish the allegations of her reply, and there was no proof thereof. The only witness on behalf of plaintiff was her husband. He identified the policy and testified that the barn described therein was burned for a total loss on March 7, 1939. The policy was introduced in evidence. On cross-examination he testified that his wife "is not here; she is not in this country and was not here at the time of the fire." He also testified that he signed her name to the application, "her not being there, you see," and that he handled all matters in connection with this insurance policy, and that he "had authority to sign her name and all that sort of thing, and do business for her generally." The record discloses that the plaintiff lives in California and has lived there for several years, and that her husband has operated the farm. The plaintiff owned the farm. Just what the arrangement was between the plaintiff and her husband for operating the farm does not definitely appear. The only evidence bearing on the matter appears in these questions and answers:

"Q. You farmed this land that appears in your wife's name? A. Yes.

"Q. You were a tenant on the place, were you, or farming it as her husband? A. Yes."

This interrogation on cross-examination then took place:

"Q. Were you present when the barn burned? A. Yes.
"Q. What caused the fire?
"Mr. Fackler: That is objected to as not cross-examination.
"The Court: Objection sustained."

Plaintiff then rested her case. The sustaining of this objection is the basis of appellant's first assignment of error. We will discuss the matter later.

The defendant then called the husband as its witness and when he had answered that he had just testified in behalf of plaintiff, the plaintiff objected to any testimony from the wit-

ness as he was the husband of plaintiff and was not required to testify in the action in any matters against the wife, and she claimed the privilege. The objection was sustained. The witness then testified that he was living on the farm at the time the barn burned, and that his wife was not then living there with him. He was then asked where his wife was living, and plaintiff's objection that the witness "is an opposing party in contravention of Section 11260," was sustained. Defendant then offered to prove plaintiff lived in California and had lived there for a long time, both before and since the fire; that all matters in connection with the insurance had been handled by her husband as her agent; that the farm was managed and controlled by him, not as a tenant, but as a beneficial owner of the land, and that he was the real party in interest. The court sustained an objection to the offer because the matters stated had not been pleaded.

The defendant then put Mr. Beaman, the president of the defendant, on the witness stand, and he testified that, 2 or 3 days after the fire, he and Mr. Miller, defendant's vice-president, called upon Mr. Eno at his home, where he was confined to his bed because of severe burns received when the gasoline exploded. He testified that Mr. Eno, on inquiry as to how the fire started, told them that the hired man went out to milk, the morning of the fire, and started the engine and milked five or six cows and the engine stopped and he couldn't get it started; that the hired man then came to the house and told Eno about it and asked what should be done; that Eno said he went down and they did not have any luck and couldn't start it, and, concluding that the gas must be faulty, he (Eno) started to draw the gas from the engine and change it and there was a lantern in the barn where the engine was, and all at once it lit with a flash and burned and he had difficulty escaping, and that his leather coat was all that saved his life. He said that the engine had been running and had stopped. There were two women present during this narration by Eno, and the witness mistakenly thought that one of them was the plaintiff. It developed during redirect examination that she was in California at the time of this conversation, but that she was present about a month later when the witness and Miller and Eno were present, and the

witness testified that the same narration in substance took place in her presence. The plaintiff then renewed her objections, on the ground of hearsay, made while the witness was testifying, and which had been overruled, and moved that the testimony be stricken. The court reserved ruling on the objection and motion. Mr. Miller then took the witness stand for defendant and testified that he was present on the occasion a few days after the fire and heard the narration of Eno as testified to by Beaman. To the question as to what Eno said, the plaintiff objected that it was hearsay and not binding on the plaintiff. The court reserved ruling on the objection. He testified substantially as Mr. Beaman had respecting how Eno said the fire started— that the engine had stopped after five or six cows were milked "and the hired man tried to start it and didn't have no success so he come to the house and got Mr. Eno and Mr. Eno went out and *they worked with it a while and they couldn't get it started,* and as Eno was taking the gas out of the engine and they had a lantern hung up *where the engine was* and all at once the thing exploded and set fire to the barn." Plaintiff moved to strike the testimony as hearsay, incompetent, irrelevant and immaterial, and not binding on plaintiff since she was not present. Ruling was again reserved by the court. The witness then testified that he was present at the second conversation when the plaintiff was present and that the conversation and what was said by Eno was about the same as on the first occasion. Counsel for plaintiff sought to weaken his testimony on cross-examination by intimating that he was confusing the two conversations and his last answer was:

"I have said he admitted the second time that we were there that the fire was caused by drawing gasoline from an engine and I want that testimony to stand."

There was no objection to or motion to strike the testimony of Miller as to the second conversation.

Defendant then renewed its offer of proof made when Mr. Eno was on the witness stand, and the court reserved ruling because the arguments might throw some light on the question.

On rebuttal, Mr. Eno testified that the manner of how the fire started was not discussed in the second conversation at all

and that he never, at any time, in the presence of the plaintiff told Beaman and Miller how the fire started.

On cross-examination, defendant again sought to interrogate Mr. Eno as to what he said in the first conversation to Miller and Beaman, as to how the fire started, and plaintiff objected that it was hearsay and not cross-examination. The court again reserved ruling with the remark that the court could take the record after argument and arrive at the truth as to the law and the fact. The witness testified:

"Well, we had a lantern there and we had drawn this gasoline and the lantern set off ten or twelve feet and it just—everything was afire just so quick, too quick."

Ruling on motion to strike was reserved. The witness admitted that the plaintiff was present at the second conversation, but that the only matter discussed was that she claimed the lantern started the fire and that Beaman and Miller claimed the engine started it, and "there wasn't very much said about what started the fire. She wanted her money." Plaintiff asked Mr. Eno whether he had informed the defendant of the gasoline engine in the barn. Defendant, among other grounds of objection, stated that the testimony would not prove any such notice on behalf of the plaintiff. The court then said: "It won't work both ways. If he was the agent then his evidence might be competent all the way through." Plaintiff then excused the witness.

The testimony was begun and concluded on the 13th day of March 1940, and the court's opinion and judgment were filed on the 14th of May following. In its opinion, the court sustained all objections to testimony and motion to strike testimony made by the plaintiff, on which rulings had been reserved, and entered the rulings by pen and ink in their proper places in the transcript, and found that there was no error in not permitting the cross-examination of Mr. Eno as to the cause of the fire, nor in refusing to permit defendant to use Mr. Eno as its own witness, nor in striking the testimony of Beaman and Miller as to the first conversation with Mr. Eno. The court also found that the fire was not caused by the operation of the gasoline engine, and that the engine was not being operated

at the time of the fire, and that the defendant had failed to establish that the fire was caused by reason of a violation of the policy.

Defendant assigns and argues error as to all of these rulings and findings.

■ I. The first assignment of error is based upon the refusal of the court to permit the appellant to cross-examine the husband of the plaintiff as to the cause of the fire, and attendant circumstances. The decisions of the courts are far from being in accord as to what is proper or improper cross-examination. In England it has been the rule that a witness called for any purpose, may be cross-examined by the opposing party upon the whole case, or any phase of it. Such was the rule in this country until, in 1827, Chief Justice Gibson, in Ellmaker v. Buckley, 16 Serg. & R. 72 (Pa.), and Justice Story in 1840, in Philadelphia & T. R. Co. v. Simpson, 14 Peters 448 (10 U. S. 535), became largely responsible for what has become known as the "Federal rule," or the "American rule," which, in brief, is that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matter stated in his direct examination. Although this rule has been followed by a majority of the courts, some in a modified form, there has been considerable criticism of it. The Michigan court early broadened this rule into what is oftentimes referred to as the "Michigan rule." It was, perhaps, first announced by Justice Campbell, in Chandler v. Allison, 10 Mich. 460, 477. In speaking of the purpose of cross-examination, the court said:

"It is difficult to perceive any principle upon which such questions can be held improper on cross-examination. The only object of this process is to elicit the whole truth concerning transactions which may be supposed to have been only partially explained, and where the whole truth would present them in a different light. Whenever an entire transaction is in issue, evidence which conceals a part of it is defective, and does not comply with the primary obligation of the oath, which is designed to elicit the whole truth. If the witness were, as he always may be, requested to state what he knows about it, he would not do his duty by designedly stopping short of it. Any question which

fills up his omissions, whether designed or accidental, is legitimate and proper on cross-examination. When the answers are given the nature and extent of the transaction becomes known from a comparison of the whole, and each fact material to a comprehension of the rest is equally important and pertinent. A party cannot glean out certain parts, which alone would make out a false account, and save his own witness from the sifting process by which only those omissions can be detected. There could be no such thing as cross-examination if such a course were allowed. No one could expose a fraudulent witness for his dishonest concealments; and every one who knew of such practices would be driven to the necessity of calling, in his own behalf, an adverse witness to show his own concealments, whom, if perjured, he could not impeach. The absurdity of such a process is too plain to need pointing out. No one can be compelled to make his adversary's witness his own to explain or fill up a transaction he has partially explained already.''

It is also quite generally held that where the testimony of a witness on direct examination makes a prima facie case, or creates a presumption or inference as to the existence of a fact not directly testified to, the witness may be cross-examined to rebut such prima facie proof, presumption, or inference. See Conley v. Mervis, 324 Pa. 577, 188 A. 350, 108 A. L. R. 160, and annotation commencing on page 167 of the last-mentioned report. We have indicated our approval of the last-stated rule. Glenn v. Gleason, 61 Iowa 28, 31, 15 N. W. 659, 661; Baker v. Des Moines City Ry., 199 Iowa 1256, 1258, 1259, 202 N. W. 762, 763; Reeves v. Lyon, 224 Iowa 659, 669, 277 N. W. 749, 754; State v. Harvey, 130 Iowa 394, 399, 400, 106 N. W. 938, 940; Clark v. Reiniger, 66 Iowa 507, 510, 511, 24 N. W. 16, 17; Klotz v. James, 96 Iowa 1, 64 N. W. 648, 59 Am. St. Rep. 348. This court early announced its approval of the Federal or American rule, by stating it, in State v. Cokely, 4 Iowa 477, 479, in the very language of Justice Story. But recognizing, as has been truthfully stated, that ''the power and opportunity to cross-examine * * * is one of the principal tests which the law has devised for the ascertainment of truth, and is certainly a most efficacious test [Starkie on Evidence I, 129],'' we have quite uniformly followed the rule expressed in Upton v. Knoll, 32 Iowa 121, 123, as follows:

"Cross-examination affords one of the most effective means of detecting falsehood and discovering truth, and the rules governing it should be applied in a broad and liberal spirit, with a view to effectuating substantial justice."

While we have rightly held that the extent of cross-examination is left largely to the sound legal discretion of the trial court, who may broaden it where the witness is hostile to the cross-examiner, or restrict it where the witness appears too friendly and eager to agree with the cross-examiner, (Womochil v. Peters, 226 Iowa 924, 285 N. W. 151), we have also held that cross-examination is a right to be jealously guarded. In Glassman v. Chicago, R. I. & P. Ry., 166 Iowa 254, 260, 147 N. W. 757, 760, the court said:

"Refusal to allow cross-examination on relevant matters covered by the examination in chief is a denial of an absolute right, and has been generally held to be sufficient ground for reversal. It is usual, under such circumstances, to allow considerable latitude of interested witnesses, and this is the rule where fraud also is charged. It is true, of course, that the trial court has a discretion in such matters, but it has been said in some of the cases that it is only after the right of cross-examination has been substantially and fairly exercised that its allowance becomes discretionary, * * * ."

In Jones v. Lozier, 195 Iowa 365, 372, 191 N. W. 103, 106, the court said:

"The right to pertinently cross-examine a witness is not a matter of the trial court's discretion. It is a valuable right, essential to a fair trial upon any issue of fact, and prejudice will be presumed from its arbitrary denial."

In Schulte v. Ideal Food Products Company, 203 Iowa 676, 682, 213 N. W. 431, 434, is this language:

"The right of cross-examination of the adversary's witness is quite distinct in character from the right of a party to examine his own witness for the purpose of adducing facts. The right to cross-examine is quite absolute. It inheres in the right of the adversary to use the testimony of the witness at all. One of its purposes is to test the credibility of the witness."

With respect to granting a wide latitude, in Witmer v. District Court of Polk County, 155 Iowa 244, 253, 136 N. W. 113, 116, Ann. Cas. 1914D, 212, we said:

"A witness may properly be required to fully explain and give information in regard to a transaction about which he has testified in order to enable the adverse party to investigate the truthfulness of the facts thus testified to."

In Barrett v. Chicago, M. & St. P. R. Co., 190 Iowa 509, 523, 175 N. W. 950, 956, we said:

"Cross-examination for the purpose of ascertaining all the facts and circumstances that actually existed, was proper, * * * ."

In the case before us, the plaintiff sued upon a written instrument, a copy of which was made a part of her petition. Under it she was entitled to recover for a loss by fire, unless that fire occurred under certain excepted conditions specified in the instrument. The instrument sued upon, which he had procured as agent for the plaintiff, was introduced in evidence upon his identification. The defendant had a right to properly cross-examine upon it. The witness Eno testified to the total loss of the barn by fire, and identified the barn as the one covered by the policy. This made a prima facie case for the plaintiff and created a presumption or inference that she was entitled to recover. The witness was present at the fire and was a participant in the starting of it. He had testified that the plaintiff had suffered a total loss because of that fire, yet he knew of circumstances and conditions attending the starting of the fire which made it a debatable question whether the plaintiff was entitled to recover. These circumstances and conditions were "connected with the matter stated in his direct examination." Under any of the rules above stated and under our holdings interpreting them, the defendant was entitled to cross-examine this witness as to the cause of the fire. The words of Wigmore, 3 Evidence (2d Ed.), section 1368, are quite apropos to this situation. This distinguished authority on the subject, in discussing the theory of cross-examination states:

"The fundamental feature is that a witness, on his direct examination, discloses but a part of the necessary facts. That

which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of the testimony, as known to the witness, and (b) * * *.

"The remaining and qualifying circumstances of the subject of testimony will probably remain suppressed or undisclosed, not merely because the witness frequently is a partisan, but also and chiefly because his testimony is commonly given only by way of answers to specific interrogatories (ante, sections 768, 785), and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Some one must probe for the possible (and usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent. Cross-examination, then, i. e. further examination by the opponent, has for its first utility the extraction of the remaining qualifying circumstances, if any, known to the witness, but hitherto undisclosed by him."

The circumstances of this case particularly called for a liberal range in the cross-examination of Mr. Eno. He was a witness interested in the outcome of the case and the success of the plaintiff, since he was her husband, her agent with respect to the insurance and other matters in general, and was in possession of and operated the farm on which the barn was located. His interest was adverse to the defendant and to its members, other than the plaintiff, who sought by the organization of this association to mutually insure each member including the plaintiff. Section 12 of the bylaws provides:

"In case of loss the insured shall give notice to the Secretary * * * and shall render to the Association a *particular proof of said loss, stating the time, origin and circumstances of said loss,* * * *." (Italics ours.)

With respect to this matter, the plaintiff's proof of loss recited:

"That a fire occurred on the seventh day of March, 1939, at about the hour of eight o'clock A. M., *the cause and origin of said fire being due to a coal oil lamp.*" (Italics ours.)

It is fair to assume that she learned the particulars of the fire from this witness. The plaintiff was not a witness, and thus avoided subjecting herself to cross-examination. Mr. Eno was the only witness who had actual knowledge of the cause. Of such a situation, the court in Jones v. Lozier, 195 Iowa 365, 371, 372, 191 N. W. 103, 105, supra, said:

"In considering the error thus assigned [limiting cross-examination], it is to be borne in mind that this witness alone was in a position to testify of his own knowledge as to most of the material matters in controversy; he was, moreover, an interested witness, and his interest was, for the most part, quite identical with that of the defendant, and the matters to which his attention was directed by the cross-examination had direct and vital relation to the matter of his direct examination."

In Glassman v. Railway Company, 166 Iowa 254, 259, 147 N. W. 757, 759, supra, we said:

"This testimony was peculiarly within the knowledge of these witnesses, * * *. The defendant was entirely in the dark as to these matters."

The reader may wonder why the hired man was not called as a witness. The record throws no light on this matter other than the appellee inquires in argument why he was not called by appellant, and the appellant replied: "Now, the appellee knows better than any one else why the hired man was not produced at the trial." We can give no consideration to a matter at which we can only conjecture.

One of the reasons given for adopting the American or Federal rule in preference to the English rule, respecting the scope of cross-examination, is that the cross-examining party may make the witness his own. Even this right was not available to the defendant because of the objection that it was making the husband a witness against his wife. Greater latitude is permitted in cross-examination where there is an element of fraud or concealment. The proof of loss indicates that a full and fair disclosure of the facts attending the cause of the fire was not made, and every hindrance was placed in the way of the defendant making a record of these facts. The plaintiff even

abandoned the attempt to show by Mr. Eno that defendant had knowledge of the presence and use of the gasoline engine in the barn when it was intimated by the court that this might make the witness competent as to the testimony refused. The trial of a contested action in court is neither a game, nor an exhibition of jugglery, but it is a gravely serious proceeding whose chief end is to bring out the whole truth so that justice may be done between the parties. The cross-examination was unduly and erroneously restricted. The appellee argues that this error, if it was error, was cured because of the combination of Beaman's stricken testimony with Miller's testimony as to an ex parte, out of court, narration by Mr. Eno of what took place at and prior to the starting of the fire. Evidence of such a narration is not a proper and complete substitute for the cross-examination of the narrator in court in the presence of judge or jury where he may be subjected to full interrogation. Such testimony as was admitted relative to the cause of the fire did not cure the error. The defendant was entitled to an opportunity to bring out by cross-examination all material and relevant facts respecting what was done just preceding and at the time of the fire. The assigned error was prejudicial to the appellant and **reversible**.

II. The cause was tried to the court as an action at law and submitted to it for a determination of the law and the facts and for judgment thereon. The opinion of the court is a part of the abstract. We have read it with care and find therein no findings of fact. The testimony of Miller respecting what Mr. Eno said about how the fire started was not stricken from the record. However, Mr. Eno contradicted Mr. Miller, and testified that he (Eno) said nothing about how the fire started in the presence of the plaintiff. This made it a question of fact for the court as to whether there was any evidence in the record as to the cause of the fire. The court makes no specific finding on this matter. But from the opinion it may be inferred that the court accepted the testimony of Miller as true, and that the narration by Eno as to how the fire started is, apparently, a part of the record and is true, but that even though these matters be conceded, the court concludes as a matter of law that the fire did not occur under any of the conditions

stated in section 11 of the bylaws. One of the conditions of this section is "the culpable neglect of the insured." Under the record, a finding could have been made that Mr. Eno, with a lighted lantern in close proximity, had opened the gasoline container of an engine which had been in operation but a short time before, and while withdrawing the gasoline from the engine, the fumes or gas from the gasoline or the container came in contact with the flame of the lantern, and caused the explosion which started the fire. But the court made no such finding of fact. Instead it said "the fact, if it be a fact," that the explosion occurred in this manner would not be an operation of the engine within the terms of the policy. The court says nothing about such conduct being or not being culpable neglect. In view of the state of the record and the failure of the court to make definite findings of fact on which to base its conclusions of law and judgment, we are unable to pass upon and do not pass upon the correctness of these conclusions of law.

III. Appellant assigns as error the refusal of the court to permit appellant to use Mr. Eno as its own witness, in view of the fact that, though he was the husband of the plaintiff, he was also her agent generally and in the insurance matter. We do not find it necessary to pass upon this matter.

Because of the errors noted herein, the judgment is reversed and the cause is remanded for new trial.—Reversed and remanded.

STIGER, HALE, OLIVER, and MILLER, JJ., concur.