

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

*Overruled by 245 Sup. Ct. Cas. -1959 Ricks vs. Smith*

October 8, 1957

Mr. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

OPINION NO. WW-273

Re: Further interpretation
of a question of in-
heritance tax to be
assessed against the
estate of R.O. C.
Brumley

     R. O. C. Brumley purchased numerous govern-
ment bonds with community funds. All of the bonds were
payable to R.O.C. Brumley or his wife, Fannie E. Brumley,
and were so registered. After Mr. Brumley's death, his
will was admitted to probate. Under the terms of the
will his entire one-half interest in the community estate
was expressly devised to his two daughters. The surviving
co-owner wife has furnished the Comptroller with a dis-
claimer in which she states that she did not participate
in the purchase of the bonds or advise as to whom they
should be payable; that the bonds were considered by the
co-owners as belonging to each individually in undivided
one-half community interests subject to testamentary dis-
position, and that she refuses to accept any interest
or ownership in the undivided one-half interest owned by
the decedent at the time of his death on the ground that the
decedent's one-half interest passed to the decedent's
daughters under his will.

     You request the proper method of computing the
inheritance taxes levied by Article 7117, Vernon's Civil
Statutes, under these facts.

     The pertinent treasury regulation (it is a regu-
lation and not a statute but is valid for the purpose intended)
reads as follows:

> "If either coowner dies without having
> presented and surrendered the bond for pay-
> ment or authorized reissue, the surviving
> coowner <u>will be recognized</u> as the sole and
> absolute owner of the bond and payment or
> reissue will be made only to such survivor,
> <u>as though</u> the bonds were registered in his
> name alone." (Emphasis supplied)

The phrases "will be recognized" and "as though" appearing in this regulation are significant. We think this means nothing more than for the purpose of making payment of the bonds by the Federal Government, the survivor will be recognized as the owner as though the bonds were registered in the name of the survivor alone. Congress and the officials of the Federal Treasury were aware that an intolerable situation would be presented in the payment of the bonds unless some uniform standard be evolved by which the Federal Government could make payment without being involved in the actual determination of the title and ownership of the bonds and the settlement of conflicting claims which would inevitably arise. Apt words were chosen such as "will be recognized" and "as though" without any attempt to commit the Treasury Department to the actual determination of title and ownership of the bonds. Under the regulation, the Treasury Department could pay with impunity without determining actual title and ownership and without being involved in the settlement of conflicting claims. This, we think was all that was attempted to be accomplished by the regulation. We do not interpret this regulation as an attempt upon the part of Congress or the Treasury Department to create, modify, or divest property rights. We shall not attribute to Congress or the Treasury Department, as applied to the problem here considered, an unwarranted invasion of the power of the State to determine for itself property encompassed within our community property law.

We think the Supreme Court of the State of Louisiana, which, like Texas, is a community property State, has clearly stated the purpose of the regulation of the Treasury Department pertaining to payment to the surviving co-owner in the case of Slater v. Culpepper, 22 La. 962, 64 So. 2d 334, 37 A.L.R. 2d 1216 in this language:

> ". . .Manifestly, these regulations, as has been previously said by this court, were designed solely to facilitate the Government by providing a simple method for the payment of savings bonds, so that it would not be subjected to the inconvenience and delays attendant to the settlement of conflicting or disputed claims."

There is nothing before us to suggest that it was the intention of R.O.C. Brumley, by gift or otherwise, by the use of the co-payment provision, to make a transfer of one-half of the community estate to the estate of Fannie E. Brumley, the surviving wife. Indeed, we think the opposite is true.

Under the community property law of this State the husband is the manager of the estate and is privileged to invest the community funds, independent of the consent of the wife, so long as he acts in good faith in protecting her interest. We must concede that the community funds could not have been more safely invested than in this case.

Reverting to the case of Slater v. Culpepper, 22 La. 962, 64 So. 2d 334, 37 A.L.R. 2d 1216, we quote further from it as follows:

"The stipulation of counsel does recite that Mrs. Bynum acted for herself in handling the purchase; but it states also that she acted for her husband and the community of acquets and gains. More than likely she was serving primarily as the community's representative, particularly since its funds were being used and the husband, or the head master of the community, was at the time physically incapacitated to act. Nevertheless, assuming that Mrs. Bynum could and did act individually with respect to her community one-half interest in the funds invested, we fail to find anything to evidence a clear and definite intention on her part to donate her portion of the investment to the husband in prospect of death--an essential for our concluding as plaintiffs would have us do. The bonds themselves do not suggest that intention, they having been registered and issued on the described co-ownership form. Neither does it appear that a donation mortis causa is contemplated by the appropriate Treasury Department regulations which formed a part of the contract to purchase. True, they do state that on the death of the co-owner the bonds will be paid to the survivor or to his estate. On the other hand they also provide that if the co-owners die in a common disaster, and it cannot be determined who died first, the bonds will be considered as belonging to both estates."

Hon. Robert S. Calvert   Page 4   Opinion No. WW-273

The Supreme Court of Louisiana in an earlier case than the Slater case, Winsberg v. Winsberg, (1952) 220 La. 398, 56 S.W. 2d 730 had this to say:

"'Federal Government is neither concerned with nor interested in the application and enforcement of State laws respecting succession or inheritance of property. Indeed, it seems manifest that the regulations of the Treasury Department for the payment of savings bonds (relied on by defendant in this case), were designed solely to facilitate the Government, by providing a simple method for the liquidation of these obligations, so that it would not be subjected to the inconvenience and delays attendant to the settlement of conflicting or disputed claims. There was not, in our opinion, any intention to interfere with the enforcement of the laws of descent and distribution of the various States. Therefore, forasmuch as the payment on death clause contained in such bonds must be considered as a valid appendage to our laws respecting the forms or dispositions mortis causa, it appears logical to apply all provisions pertaining to testamentary dispositions, except those dealing with forms, in determining rights and liabilities under such a devise.' The court further said: 'Here in seeking authority for a construction of a Federal regulation or a reasonable implication therefrom, loose construction could come to mean the right of the Federal Government to do in its regulations whatever was not forbidden by the United States Constitution, provided the act was deemed to be for the general good. If such a theory of constitutional construction were to prevail and the original notion of the Constitution as a grant of power, under which everything not granted was withheld, were to be replaced by the rule that everything not withheld was granted, the Federal Government would be admittedly supreme and the reserved rights of the States would speedily become only a formula of words.'"

The Supreme Court of Iowa in the case of Sinift
v. Sinift, 229 Iowa 256; 293 N.W. 841 stated that it did
not question the authority of Congress to enact legisla-
tion authorizing the issuance of bonds determining the
right of ownership as it might see fit but that the regu-
lation did not have that effect.  The Court held, as did
the Supreme Court of Louisiana, that the regulation in
question was merely to expedite the work of the Department
in connection with payment or the transfer or exchange
of co-ownership bonds.

In the case of Foraker v. Kochs (1931) 180 N.E. 743,
the Ohio Court of Appeals was concerned with these facts.
A husband and wife purchased with their joint funds a United
States Savings Bond which was registered in their name in
the alternative as co-owners, and retained by the husband in
his bank safety deposit box.  After the wife's death, the
husband had the bonds reissued as a coupon bond in his name
alone.  The court said that under state law, in the absence
of a definite contract for survivorship the presumption
arising from the purchase of the bond was that the interest
of the joint owners was equal without survivorship, and
that the bond belonged equally to the estate of the wife and
the estate of the husband who died subsequently.  In this
opinion the court said:

> ". . .'It is true that, for the purpose of
> registration and transferring, the rules of
> the United States Treasury  recognize the
> survivor as the proper party to whom transfer
> of the bond should be made.  That rule is
> for the convenience of the United States
> government in the transaction of its business,
> and does not and cannot confer title in the
> Liberty bond, or create a contract of survivor-
> ship in the bond in the state of Ohio, where
> a contract of survivorship is not presumed.'"

In Texas, jus accrescendi has been abolished, and
survivorship rights must be expressly created, Chandler vs.
Kountze, 130 S.W. (2) 327, (Tex. Civ. App., error ref. 1939).
It may be that in non-community property States (and a
majority of the States fall in that category) the Treasury
regulation justifies the rule that the surviving co-owner
is the sole owner of the bonds.  Whether that rule be sound
or unsound as applied in the non-community property States
we need have no concern.  But in our State where the community
property rule prevails, we think it is unsound and unfair and
should not be followed.

If we felt that the Courts of our State had committed us to the survivor take all rule as to these bonds, we would feel impelled to follow, but such is not the case. This calls for some explanation of the cases which have been considered to have some bearing upon this question. There are only three such cases which we shall discuss briefly, they are Edds v. Mitchell, 143 Tex. 307, 184 S.W. 823, 158 A.L.R. 470; McFarland v. Phillips, 253 S.W. 2d 953 (Writ refused no reversible error); and McClain v. Holder, 279 S.W. 2d 105 (Writ refused, N.R.E.).

The Edds case involved primarily a construction of the will of O. D. Rohde which gave to his wife, Julia E. Rhode, a life estate in his share of the community estate with power of sale and authority to use the proceeds without accountability therefor, with the remainder at her death to his heirs at law. After O. D. Rhode's death, Julia E. Rhode, his surviving wife acquired five United States Savings bonds by the use of proceeds from the sale of real estate belonging to the community Estate. She thereafter died with these bonds in her possession. The bonds were made payable to Julia E. Rohde and upon her death to Reta B. Edds. Unlike the bonds involved here they were made payable to a designated beneficiary upon the death of Mrs. Rohde. The controversy as to these bonds was between Mrs. Edds and the administrator of the estate of O. D. Rohde and involved only a one-half undivided interest therein. It was agreed that there was no controversy as to the other one-half of said bonds since they were purchased from the proceeds of the sale of a portion of the community estate of O. D. Rohde and his wife, Julia E. Rohde.

The Supreme Court did not decide this case upon the theory that the Treasury Regulations had the effect of making Reta B. Edds the sole owner of the one-half community, but upon the theory that a valid contract had been made by the registered owner and the Government for the benefit in part of a third party, the designated beneficiary who acquired a vested interest though it was defeasible at the time the contract was made. There is no beneficiary involved as to the bonds here involved, as is true in the Edds case. Moreover the law as to third party contracts is not involved in the bonds with which we are here concerned.

The McFarland case does not actually involve co-ownership payment of bonds by the husband and wife as is the case here. Moreover, if this case should be construed

as confirming the right of the survivor husband or wife to take full title and ownership, upon the death of either, of Government Savings bonds purchased with community funds, then it is in principal in conflict with the case of McClain v. Holder, 279 S.W. 2d 105 by the Court of Civil Appeals at Galveston (Writ refused, n.r.e.). It is true that government bonds were not involved in the McClain case, but the bonds involved were co-payment bonds and the theory of the survivor acquiring full title and ownership was involved. The Court rejected the right of the survivor to take full title and ownership of the bonds; and since there was no will involved, ordered a partitition of the bonds according to the laws of descent and distribution as contended by those who opposed the complete ownership in the survivor. Where there is a conflict between decisions of two Courts of Civil Appeals which has not been resolved by the Supreme Court, we are at liberty to choose between the two decisions; and we prefer to follow the McClain v. Holder case in preference to McFarland v. Phillips as being in accord with our concept of community property laws of this state and based upon better reason and justice.

It is apparent from what we have said that it is our opinion that the one-half community interest in the United States Savings bonds purchased with community funds of Fannie E. Brumley and R.O.C. Brumley, husband and wife, payable to them as co-owners, passed upon the death of R. O. C. Brumley to his two daughters, by his will, and that they owe the inheritance tax on said one-half interest. The surviving wife, Fannie E. Brumley, owes no tax.

To the extent that this opinion may be in conflict with prior opinions of this office they are expressly overruled.

### S U M M A R Y

Upon the death of either husband or wife, the community one-half interest of the deceased spouse in United States Savings Bonds, which are payable to husband and wife as co-owners passes to the devisees named in the will and not to the surviving spouse.

To the extent that this opinion may be in
conflict with prior opinions of this office
they are expressly overruled.

Yours very truly

WILL WILSON
Attorney General

By: L. P. Lollar
L. P. Lollar
Assistant

LPL/fb

APPROVED:

OPINION COMMITTEE

George P. Blackburn, Chairman

Joseph G. Rollins

J. Milton Richardson

B. H. Timmins, Jr.

Houghton Brownlee, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

By: James N. Ludlum