STATE OF IOWA, Appellee, v. LEE COLEMAN et al., Appellants.

No. 44583.

APRIL 5, 1939.

REHEARING DENIED JUNE 23, 1939.

Thomas J. Bray, for appellants.

Fred D. Everett, Attorney General, Jens Grothe, Asst. Attorney General, Clarence A. Kading, County Attorney, and Clifford C. Heer, for appellee.

SAGER, J.—It will not be possible, nor, in the light of the conclusion herein announced, is it necessary that we examine specifically the multitude of errors asserted in the argument of the defendants. Many of these will doubtless be avoided on another trial. As is to be expected, there is much contradiction in the stories of the witnesses for the state and of those for the defendants. In matters of conflict properly for the consideration of the jury, their findings are accepted for the purposes of this opinion.

The following testimony of Leland Moon, a student of the high school journalism class, who was near when the incidents out of which this case arose happened, gives a temperate summary of the State's case. We quote:

"I saw two men and a woman walking there on the sidewalk abreast. I first observed them in front of Speed's Drug Store, which is the first door west of Nieburg's store. I did not observe them doing anything out of the way at all. They were not talking loud enough so that you could hear them. They were not making any loud noise. They were not creating any disturbance. They were not bothering anybody. After they passed Conrey, he said, 'Get that fellow off the street.' The first thing I remember is that Conrey hit Coleman and knocked him down. At the time Coleman went down he was just a little west of the door of the pool hall. Before the scuffling began, Conrey was standing a little east of the pool hall door. I do not remember what Conrey did while Coleman was down. I was writing the notes for my story and I didn't see them. I was in front of Nieburg's store when I was doing my writing. When Coleman got up they began struggling again. Coleman and Conrey continued to scuffle there for five or ten seconds and then I saw Conrey go down. When Conrey went down, he was ten or fifteen feet west of the pool hall door, in front of Nieburg's. As they scuffled, naturally they went west. I heard nothing said there at all."

And for defendants this, from the testimony of Walter Rice who was with them before and at the time, gives a general and fairly accurate view of the testimony in behalf of the appellants. Rice testified:

"We walked along the street like ordinary every-day people. There were probably six or seven people along the street besides us three in that block. At that time I did not know Conrey, or Maddy, or Huffman. As we were along about Nieburg's Variety Store, I heard somebody say something about getting off the street and Lee Coleman said something about we had just as good a right on the street as he had. We didn't take but a few steps until somebody hit Coleman and knocked him down. The person who knocked him down came in from across the walk on Mrs. Coleman's side. It looked like he hit Coleman on the side of the head or face. Before that time Coleman had not hit anybody and had not appeared to be striking at anybody. Prior to that time Coleman had not turned around. When he was struck, Coleman staggered to his knees west three or four feet. I saw him get up. Conrey

was pretty close to Coleman when Coleman got up. They were face to face. Coleman and Conrey both had their hands in the air just before Coleman hit Conrey. Just after Conrey went down, I heard Mrs. Coleman say for him to let loose of her foot. I did not see Mrs. Coleman kick him after he was down and did not see her kick or strike at him before he went down.''

It is perhaps unnecessary to say that other witnesses differed in greater or less detail from that of these two, some seeing more than others, and some showing a greater or less degree of bias. In addition to the testimony of Moon on behalf of the State, it should be stated that witnesses testified that the defendant Oral Coleman entered into the melee and kicked Conrey, the deceased, when he was down. The record discloses no previous contentions of quarrels between Conrey and these defendants, nor earlier contacts, except on one occasion about two or three weeks before, than the happenings around which this case revolves.

After what will be referred to as the fight, the officer Conrey got a night-stick and followed the defendants to a hotel to which they had proceeded. Some altercation ensued there, and in its progress Conrey struck Coleman a severe blow in the head. At that time too, defendant Oral, according to the State's witnesses, entered into the conflict with profane speech. Except for the use of his club by Conrey, and of fists and perhaps defendant Oral's foot, nothing but verbal conflict took place. Following their arrest the defendants were lodged in jail, and later indicted for murder.

■ As one ground of complaint, defendants say that the court erred in refusing to set aside the indictment because a person not authorized thereto by law was in the grand jury room while the question of indictment was being considered. The record shows that the person so present was an assistant county attorney duly appointed by the court upon orders entered of record. Since the county attorney may appear before the grand jury under Code section 13706, and the court may appoint assistants under section 5243, we find no error here.

■ Defendants complain that there was error in overruling their challenge to the juror, Mirtie Niles. While this challenge should have been sustained in the opinion of the writer, it calls for no extended attention here. Mirtie Niles did not

sit, having been removed by one of defendants' strikes. State v. Reed, 201 Iowa 1352, 208 N. W. 308, tends strongly to support appellants' argument that it was error to compel them to use one of their strikes. We are not called on now to analyze this case.

Division III of defendants' argument is a broadside criticism of the rulings of the court on different matters. Errors under this head are numbered from 1 to 13, and each number complains of one or more rulings. We note some of them for the purpose of indicating their general character, and with the thought of pointing out views which may be of assistance when this case is tried again. We might say in passing that the record leaves somewhat of an impression that the court was rather strict in some of its rulings against the defendants.

■ As error under one group, defendants complain that there was error in permitting evidence showing that the defendant Lee Coleman had drunk a certain quantity of alcoholic liquor shortly before the incidents herein referred to occurred. This consisted in showing that the defendant had half a pint of whisky with him that afternoon and that he had taken one or two glasses of beer. Likewise as a part of the same general subject, the court permitted evidence of the production by Coleman of this whisky bottle and of its being offered to witness Beard. We are of the view that there was no error in admitting this testimony. While it is not claimed the defendant was intoxicated, the admission of testimony as to the general condition, appearance and manner of the defendant at a time so near the occasion of the encounter with Conrey was both relevant and material.

■ Defendants complain of the ruling of the court in allowing the witness Hunt to testify that about two or three weeks before the occasion involved here, he, as marshal of the town of Knoxville, and Conrey, the deceased, observed a disturbance in which the defendants were engaged. He was permitted to testify that the Colemans were engaged in a fight and that he, the witness, asked certain bystanders if they would take the defendant home because the defendant Lee at that time was too drunk to drive a car. Defendants objected on the ground that this was incompetent, irrelevant, immaterial and prejudicial. This objection was overruled. It should have been sustained.

The claimed purpose of the state was to show that Conrey then and there gave evidence of his official position as policeman, and that Coleman, when he had the fight with Conrey on March 17th, knew that he was dealing with a peace officer. Conceding that this purpose was legitimate, there was no necessity for permitting the narration of the details to the extent of showing the commission of a separate crime; nor warrant for the admission of conversation with third parties which by no circumstances could have any bearing on the case on trial, except to prejudice the defendants.

Defendants' complaints, under errors 5, 6, 8 and 9, grouped under division III, are not well taken. Error 5 had to do with an alleged conversation with the daughter of the deceased in which he was alleged to have said, "You are the cop's daughter. I guess I'll have to be careful."

Error 6 dealt with a question asked by the defendant and refused by the court of witness Rickett when he was asked, after telling his version of what took place: "You do drink? A. If I want a drink I take it." This was properly stricken because it was not material.

Error 8 is based on the court's refusal to permit the defendant to cross-examine Doctor Mater on the history of the deceased, following examinations made on Conrey about midnight of March 17th and thereafter, until March 25th. There is no error here because the witness was not asked on direct examination to narrate anything but what he found as a result of these examinations.

Error 9 deals with the conversation by Donnelly with the defendant before the Colemans were taken to jail, the purpose thereof being to show that the defendant Lee Coleman recognized and was acquainted with deceased. Defendants' objection to this was properly overruled, as was his attempt on cross-examination to go into other parts of the conversation which was alleged then took place. The court might well have admitted it, but there is no reversible error for it not having done so.

Error 10 was well taken but not of sufficient importance to justify a reversal if it were standing by itself. The state moved to strike, and the court sustained the motion of defendants' testimony by the witness Rice, that Coleman "wasn't in good shape, * * * and that he was kind of flighty and

kind of nervous and weak.'' This called for a description of defendant's condition at the very time or just previous to the affray. It should have been admitted especially in view of the court having permitted testimony about the drinking of intoxicating liquor early in the afternoon.

Errors 11, 12 and 13 are passed with not having sufficient merit to demand attention. These have to do with testimony about the condition of the defendant at the time of the occurrence, and of the deceased at another time.

Division IV of appellants' argument complains that the court erred in overruling their motion to strike from the record the testimony of witness Hunt, pertaining to the commission of a crime other than that charged in the indictment and for which the defendants were on trial. This reference is to the instance wherein this witness, the city marhsal, was permitted to testify to the alleged drunken brawl in which the defendants were alleged to have been engaged two or three weeks before. This objection is good and the motion should have been sustained. We think the error at this point was not corrected by the giving of instruction No. 15, of which defendants complain in their division XII of the argument.

Divisions V, VI and VII complain of the ruling of the court on defendants' motion, individually and jointly made at the close of the State's case, for a directed verdict. The motions asked for too much and were properly overruled. They were based on the idea that the State had not proven the defendants guilty of crime of any degree. This was a question for the jury under proper instructions. There was no error here.

Division VIII of appellants' argument complains of the refusal on the part of the court to give instruction No. 15 asked by them. The instruction was properly refused, if for no other reason than it asked the court to instruct, among other things: ''The fact that Bert Conrey was a merchant policeman at said time has no bearing upon any issue in this case and should not be considered by you in arriving at your verdict.''

Division IX complains of the giving of the general instruction by the court, more particularly for its alleged failure to inform the jury that the plea of not guilty cast upon the State the burden of proving beyond a reasonable doubt that

the defendants were not acting in self-defense. An instruction by the court on its own motion gives to the defendants all they were entitled to on the question of self-defense.

Complaint is made against the instruction of the court with reference to the weight and effect of the evidence of good reputation on the part of the defendants. We have read and re-read this instruction and find no reversible error therein. If in one aspect the court deals with the *reputation* of defendants for being peaceable and law abiding citizens, instead of their *character* in that respect, defendants are not in a position to complain because they led the way in offering the evidence they did.

Division XI complains of instruction No. 10, wherein the court told the jury how intent may be proven or arrived at. We see no just cause of complaint here.

Appellants' complaint with reference to instructions Nos. 13½ and 14, having to do with police officers and their rights and duties, and the way the testimony on this subject should be considered by the jury, is not warranted.

Division XIII complains of the instruction wherein the court sought to limit the effect of the testimony of George Hunt, marshal at Knoxville, with reference to the disturbance alleged to have been engaged in by defendants two or three weeks before the incidents here involved. We have already commented on the testimony of this witness and found prejudicial error in the extent to which the court permitted this evidence to be received. We think that this instruction did not overcome the error. Appellants are justified in the objection made here.

Defendants' objection to the instruction with reference to what took place immediately after the affray is without merit and warrants no further attention.

This brings us to errors complained under divisions XV to XIX, inclusive, and XXI and XXIV. These deal with instructions having reference to murder in the first and second degrees. Summarizing defendants' complaint, it is that there is no warrant in this record for submitting to the jury the question as to murder in either degree. We refrain from comment on these complaints. The finding of the jury of guilt in the second degree, removes the charge of first degree from the case and the defendants cannot be tried on that again. As to any other offense of which the defendants may have been guilty,

the evidence may be different on re-trial than it is in the record before us.

No considerable advantage is afforded by a reference to the decided cases because each turns upon its own special facts, but our views generally on the subject of murder and manslaughter will be found in these, among other, cases: State v. Johnson, 215 Iowa 483, at page 488, 245 N. W. 728; State v. Johnston, 221 Iowa 933, 267 N. W. 698; State v. Heinz, 223 Iowa 1241, 275 N. W. 10; State v. Quan Sue, 191 Iowa 144, 179 N. W. 972; State v. Brewer, 218 Iowa 1287, 254 N. W. 834; and State v. Leib, 198 Iowa 1315, 201 N. W. 29; 13 R. C. L., Title—Homicide, secs. 81 to 84; State v. Trott, 190 N. C. 674, 130 S. E. 627, 42 A. L. R. 1114.

These cases are not cited as being precisely in point in the case before us, but as giving a general idea of the views heretofore expressed by this court and others in cases of this kind.

Defendants complain of an instruction which, among other things, has this to say: "A lower conviction or an acquittal should not rest on the notion that you can do as you please arbitrarily." While this instruction is correct in the abstract, we do not commend it, particularly in view of the fact that under the circumstances disclosed by this record, it might easily have had what appellants say was a "coercive" effect.

Other complaints made by the defendants have been examined and so far as any may have merit, they are taken care of by the result hereafter announced.

Because of errors pointed out, the case should be and is reversed.—Reversed.

MITCHELL, C. J., and HALE, BLISS, RICHARDS, OLIVER, and MILLER, JJ., concur.