In re Probate of Alleged Will of Della E. Smith.

Clara Chase Davis et al., appellants, v. Albert D. Smith et al., appellees.

No. 48381.

(Reported in 60 N.W.2d 866)

November 17, 1953.

Eugene R. Melson, of Jefferson, and Doran, Doran, Doran & Erbe, of Boone, for appellants.

Harris, Hanson & Harris, of Jefferson, for appellees.

THOMPSON, J.—Della A. Smith died on September 4, 1952, leaving a purported last will and testament executed on August 21, 1952. The will devised her entire estate, after payment of debts, to her husband, Albert D. Smith. Eleven nieces and nephews, who would have been entitled to inherit in the event of intestacy, filed objections to admission of the instrument to probate. Trial was had to a jury and a verdict returned upholding the validity of the will. From judgment on the verdict the contestants appeal.

Two errors are assigned: 1. The trial court erred in giving its Instruction No. 11, and in refusing to give contestants' requested Instruction No. 1; and 2, the court erred in excluding the offered testimony of contestants' witness Gladys Smith.

I. Contestants' requested Instruction No. 1 is set out herewith: "Mental weakness due to disease does not deprive one

of his testamentary capacity unless and until it progresses sufficiently that the person making the will ceases to comprehend the nature and effect of the act of testamentary disposition."

We assume it gives contestants' contention as to the correct rule of law applicable at this point. The court did not give the requested instruction, at least verbatim, but did give its Instruction No. 11, which we quote: "Mental weakness due to disease does not deprive one of testamentary capacity unless, and until, it becomes *so complete* that the person making the will ceases to comprehend the nature and effect of the act of testamentary disposition. (Emphasis supplied)"

If there is any substantial difference in the two instructions it is not readily apparent. It seems to be contestants' thought that there is a material distinction between the phrases "it progresses sufficiently" in their requested instruction and "it becomes so complete" as given by the court. They argue the point as though the court had said "becomes complete", omitting the word "so." It is true there are no degrees of completeness, as there are none of perfection. But the objection is clearly hypercritical and lacking in merit. We are not concerned with the niceties of the English language, but only with whether the jury properly understood the terminology used by the court. What the court told them, in language which could not have been misunderstood, was that mental weakness does not deprive one of testamentary capacity unless and until it becomes so *nearly* complete that the person making the will ceases to understand the nature and effect of his act. The court did not tell the jury the disease inducing mental weakness must be complete; only that it must be so complete that the nature and effect of the instrument was not comprehended. Any person of ordinary intelligence could not understand otherwise. To hold with contestants would be a species of legalistic hairsplitting not justified by the language used.

II. Contestants' second assignment of error requires more attention. One of the principal witnesses for the proponents was Evelyn Moran who acted as a nurse for the decedent from the onset of her illness, on August 17, 1952, until her death on the following September 4. She is, apparently, a niece of the decedent's husband, the sole beneficiary under the will. Mrs. Smith suffered a hemorrhage of the brain resulting in paralysis of the

left side of her face and body on the first date. Since she executed the will in question on August 21, four days later, her condition at that time was the material and vital point in the case. Miss Moran testified to a considerable improvement in her condition on the 19th and 20th, to certain conversations she had with her patient, including some statements made by Mrs. Smith, and to her good appetite until about August 27.

On motion of the contestants the court made an order at the beginning of the trial excluding all witnesses from the courtroom. At times during the trial the court admonished the attorneys and witnesses about the rule. After Miss Moran had testified and the proponents had rested, contestants offered, as a rebuttal witness, one Gladys Smith (not related to the decedent or her husband), a near-by neighbor. She had been in the courtroom during the trial. When she was offered as a witness objection was made by counsel for proponents on the ground she had violated the exclusionary rule. Contestants' counsel then said: "This witness, Mrs. Gladys Smith, was in the courtroom today, but was not in the courtroom yesterday. I did not know that she would be a witness until I talked with her last evening."

At this same point, and before the court had ruled upon proponents' objection, contestants' counsel made an offer of proof stating the witness was called in rebuttal "for the sole purpose of impeachment of the testimony offered on behalf of proponents through their witness, Miss Evelyn Moran * * *." Counsel then continued with the offer, saying it was his intent to show the witness Moran had made statements as to Mrs. Smith's condition, particularly concerning her ability to talk and her appetite, which were contradictory to her testimony on the stand. The court then called attention to the rule made at contestants' request, that he had admonished counsel for the respective parties it would be their responsibility to make sure witnesses were excluded, he had repeated the admonition from time to time, and he saw no valid excuse why the rule should be waived. In effect, he announced the proposed witness would not be permitted to testify.

a. The question raised by the assigned error is twofold: Did the trial court have any discretion in permitting or refusing

the offered testimony; and if it had such discretion, did it abuse it? A collateral issue arises as to whether the error, if one was committed, was prejudicial under the record in this case; but this we shall discuss under subdivision b following.

On the question of the right of trial courts, within a proper discretion, to disqualify a witness who has disobeyed an order of exclusion, Wigmore on Evidence, Third Ed., Vol. VI, 366, 367–370, section 1842, says:

"In the United States, the great majority of Courts hold in general that *the Court may in discretion disqualify the witness* [italics quoted]; some of these Courts, however, making the proviso that the party must have connived. The other Courts seem to forbid in general terms the disqualification of the witness; though in some of them it can hardly be doubted that a proviso as to the party's connivance would be enforced.

"On the whole, then, the Courts occupy a common ground where there has been fault in the party; at one extreme stand a few Courts denying disqualification even in that case; at the other extreme stand probably the majority of Courts, permitting disqualification even without the party's fault."

The purpose of the rule is of course to lessen the danger of perjury, or at least of a suggestion to following witnesses of what their testimony should be to correspond with that previously given; to put each witness on his own knowledge of the facts to which he testifies rather than to have his memory refreshed, even guided, and his testimony colored by what has gone before. The minority of courts which have declined to enforce the rule say it is too harsh; a party should not be deprived of what may be essential evidence because a witness has violated an exclusionary rule. Dean Wigmore does not agree with this theory. He says, in effect, a party who has connived is justly deprived of testimony, since he has invited the disqualification of his witness; it is difficult to prove connivance; if the witness has evaded the rule he is an unsafe and untrustworthy witness; of two innocent parties, assuming there is no connivance, he should suffer whose witness has been in fault, since it is each party's duty, at whatever cost, to see his witnesses obey the rule. VI Wigmore on Evidence,

Third Ed., 366, 367, section 1842. He also points out that no one contends the disqualification should be an absolute requirement, but only a measure properly within the just discretion of the trial court. The question is also discussed in 53 Am. Jur., Trial, section 33, pages 48, 49, and 64 C. J., Trial, section 134, pages 121, 122.

Wigmore classes Iowa with the minority jurisdictions which hold the witness may not be disqualified, and there is no discretion resting in the trial court so to do. Before turning to a discussion and analysis of the Iowa authorities, we call attention to the record above set out which shows the offered witness here did remain in the courtroom one day, or a part thereof at least, after counsel for contestants knew she would be a witness. The word "connivance" seems an unduly harsh one to apply here; it denotes some sort of improper collusion, and we have no thought counsel had any idea of violating the exclusionary rule by permitting her to remain. Yet it cannot be said she remained without his knowledge, and he was charged with the responsibility of keeping his witnesses out of the courtroom. Very likely he did not know this particular witness would be called until the trial was well along. She was to be a rebuttal witness. But the trial court had all these matters in mind, and it exercised its discretion against receiving her testimony.

The first Iowa case on the subject of exclusion is Grimes v. Martin, 10 Iowa 347, 349. One Snoddy, who had been in the courtroom while defendant testified, was called to contradict him, and over objection was permitted to testify. This court said: "If the witness disregarded the order of the court in the premises, he was guilty of a contempt for which he might be punished, but the act would not render him incompetent to testify. It might affect his credibility. It is proper however to state that it does not appear from the record that the order of the court separating the plaintiff's witnesses was intended to exclude them from the courtroom after their examination in chief."

The language used, while seeming to place Iowa in the minority which holds disqualification can never be used, is dictum. The witness was permitted to testify, and it was no part of the court's holding to say whether he could have been right-

fully disqualified. Further, it appears there was an insufficient showing that the rule was intended to apply to witnesses, as the one in question, who had been examined in chief and later recalled.

State v. Kissock, 111 Iowa 690, 692, 693, 83 N.W. 724, 725, comes closer to supporting contestants' position. A witness for defendant, having been examined and cross-examined, was excused, and he remained in the courtroom until he was later called for further examination. The court refused to permit him to testify. We said: "In this there was error. Under certain circumstances the witness might have been punished for contempt, but the mere fact that he remained in the room contrary to the previous order did not justify the court in denying permission to recall and re-examine the witness."

It is to be noted the discussion at this point was brief. There is no statement of the reason for the holding and no authorities are cited. The case involved another point which the court had previously discussed at length, and as to which it had decided there was error. Whether it meant to say a witness could under no circumstances be disqualified, or whether it considered there was only an abuse of discretion on the part of the trial court, is not made clear.

In State v. Pray, 126 Iowa 249, 252, 253, 99 N.W. 1065, 1066, the lower court permitted a witness to testify although she had remained in the courtroom in violation of a sequestration rule which required the witnesses to remain in a room separate from the courtroom. This court said she was apparently not confined with the other witnesses because she was the only woman among them, and concluded with this statement: "* * * the ruling of the court refusing to exclude the witness from testifying under the circumstances was fully within the exercise of a reasonable discretion."

Here is a plain indication that the court had the right to disqualify the witness if a just discretion so determined. The case seems to place Iowa with the majority, although here again there is no discussion of the reasons for or against disqualification or any citation of authorities.

James v. Fairall, 168 Iowa 427, 432, 148 N.W. 1029, 1032,

is the latest Iowa case called to our attention, or which our own research has disclosed, dealing in any way with the question under discussion. A witness who had previously testified was called in rebuttal, and objection was made and sustained because he had remained in the courtroom after his previous testimony. The Supreme Court said: "This would be error, *probably*, if the appellant was in position to raise the question. We are of opinion that, under such circumstances, the witness should be allowed to testify, and the jury to judge the weight of his testimony in view of the fact that he had heard other witnesses." (Italics supplied)

Again, while the language of the court is susceptible to the interpretation it supports the minority rule which holds disqualification is never proper, it may also be held to mean it would have been an abuse of discretion to refuse to accept his testimony, and the use of the word "probably" makes the exact holding uncertain. The lack of extended analysis or discussion of the question in each of the Iowa cases and the total absence of cited supporting authority leave the exact meaning of the language used in doubt.

We prefer to follow the majority rule, implicit in State v. Pray, supra, which holds the trial court has a reasonable discretion in disqualifying a witness who has violated an exclusionary order. It must be expected this discretion will be exercised in a spirit of fairness and so that it will not unjustly deprive a litigant of helpful testimony. The trial court is on the scene; it knows the situation far better than we can possibly do, and, within reasonable limits, it must be permitted to enforce its own rules, by disqualification of the witness in a proper case. Any other holding would make a rule of exclusion valueless. Any expressions in Grimes v. Martin, State v. Kissock and James v. Fairall, all supra, indicating a contrary view are expressly disapproved.

We turn then to the question of whether the trial court here abused its discretion. Each case must be judged by its own facts. Here we think the showing the witness was in the courtroom after counsel knew she was to be a witness supports the trial court's position, at least to the point where we cannot say it went beyond its discretion. Probably the situation was in-

advertent on the part of counsel, and perhaps due to ignorance of her duties on the part of the witness. Nevertheless, these were matters peculiarly within the knowledge and province of the court, and we are not disposed to interfere.

■ b. We have gone into the question of the right of disqualification of witnesses not only because it is involved here, but for the purpose of clarification of our confusing pronouncements previously made. As a matter of fact, the instant case presents another sufficient reason for affirmance of the trial court at this point, which indicates error in excluding the witness, if error there had been, would have been harmless. We have pointed out the statement by contestants' counsel that the testimony of the disqualified witness was offered for the sole purpose of impeachment of certain statements made by the proponents' witness Evelyn Moran. It is now urged by proponents that no foundation had been laid for such impeachment, and this contestants concede. But they say this objection to the witness or her offered testimony was not made below. This is true. But we think the law is well established that, while we may not reverse on matters not raised in the trial court, it is our duty to affirm if any proper basis appears for the ruling even though it is not the one on which it was put or on which the court acted. As we said in Folsom v. Grove, 233 Iowa 1140, 1142, 11 N.W.2d 368, many a learned court is occasionally right for a wrong reason.

More specifically, we said in In re Will of Crissick, 174 Iowa 397, 416, 156 N.W. 415, 422: "If matter is, in fact, objectionable * * * it does not matter that objection was not more specific, or that none was interposed. * * * But, where the court sustains an objection, and there are, in fact, good grounds for so doing, there will be no reversal because good reasons or full reasons were not presented below."

Again, in In re Will of Jahn, 184 Iowa 416, 421, 422, 165 N.W. 1021, 1023, Judge Ladd, speaking for the court, used this language: "Contestant's counsel moved that what the witness thought be stricken, without stating any ground for the motion. It was sustained. Appellant argues that this was error, for that no reason was stated. Had the motion been overruled, error could not be predicated thereon, owing to omission to state the ground of the motion. Fairness of counsel to the court exacts this rule.

But it does not follow that the trial court may not, sua sponte, exclude improper evidence. This is for the reason that a litigant is not entitled to have improper evidence considered by court or jury, and, therefore, no right is impinged by the exclusion of evidence which should have been excluded on sufficient and timely objection. There was no error."

See also Kent State Savings Bank v. Campbell, 208 Iowa 341, 344, 223 N.W. 403, and cases cited therein.

■ Contestants say, however, that injustice was done them because if the defect in their offered testimony had been pointed out, presumably by objection to its competency based on the absence of a foundation for impeachment, they might have obviated it by asking leave to recall the witness Moran for the purpose of further cross-examination in which the proper basis for the impeaching testimony might have been established. This would have involved reopening proponents' case, and would have been within the discretion of the court. But we think the real answer to this contention is that we must judge evidence as the record stands when it is offered. Hibbets v. Threlkeld, 137 Iowa 164, 168, 114 N.W. 1045; I Wigmore on Evidence, Third Ed., section 17, page 319.

■ ■ We have repeatedly held one who offers testimony to which objection is sustained must generally, in order to predicate error upon the ruling, make an offer of proof. Richmond Bros. v. Sundburg & Co., 77 Iowa 255, 258, 42 N.W. 184; Votaw & Hartshorn v. Diehl, 62 Iowa 676, 678, 13 N.W. 757, 18 N.W. 305, and many later cases have laid down this rule. This means, logically, the offeror must show not only what evidence he would have introduced if permitted, but that such evidence was in all respects material and competent. We think it avails a litigant nothing to make an offer of proof which shows on its face the proposed evidence is incompetent. Sounder ground might have been reached by contestants here if they had first asked the recall of the defendants' witness whom they sought to impeach, and laid the foundation by proper questions. The burden was upon them to show the competency, relevancy and materiality of their evidence when they offered it, and we cannot speculate it might have been made competent by some later development. In a somewhat

similar situation this court said: "Contestant argues that the testimony should have been admitted for impeachment purposes, but no attempt was made to lay the foundation for such purposes." In re Estate of Repp, 241 Iowa 190, 195, 40 N.W.2d 607, 610.

III. Proponents urge affirmance for the reason the whole record shows contestants were not entitled to prevail, and so any error was harmless. Since we have found no prejudicial error, it is unnecessary to decide this point.—Affirmed.

All JUSTICES concur.