STATE OF IOWA, appellee, v. JAMES P. MUSACK, appellant.

No. 50391.

(Reported in 116 N.W.2d 523)

July 24, 1962.

William H. Bartley, Donald L. Diehl and J. Newman Toomey, all of Iowa City, for appellant.

Evan L. Hultman, Attorney General, John H. Allen, Assistant Attorney General, Ralph L. Neuzil, County Attorney, and Edward L. O'Connor, Assistant County Attorney, for appellee.

THORNTON, J.—Defendant was indicted, tried and convicted of involuntary manslaughter. He appeals.

The indictment charged defendant with operating a motor vehicle on a public highway (city street in Iowa City) in such a manner as to indicate a willful or wanton disregard for the safety of others in that he operated the vehicle while under the influence of intoxicating liquor, in excess of the speed limit, and on the wrong side of the street in such a manner as to indicate a willful or wanton disregard for the safety of others in violation of section 321.283, Code of Iowa, 1958, causing the vehicle to crash into a tree thereby causing the death of Terry Kay Rios, a passenger in the vehicle.

This tragic event took place October 10, 1960. The deceased, Terry Kay Rios, was an infant, two months and seven days old.

The State's evidence shows the defendant, James P. Musack, 21 years old, Thomas Glick, 18 years old, Frank Rios, 19 years old, father of the deceased infant, and Jeannine Rios, 17, mother of the infant, spent the afternoon of October 10, 1960, together. They visited a city park, purchased two six-pack 16-ounce cans of beer, the three men drank the beer at the Rios trailer home, defendant purchased a fifth of whiskey about half of which was drunk by the three men, the amount each drank may have varied some. Shortly after five p.m. they left the Rios trailer home for the purpose of finding Mrs. Rios' mother to take care of the infant, Terry Kay. Defendant, Musack, was driving his car, a 1956 Oldsmobile. Frank Rios was in the front seat with him, Thomas Glick and Mrs. Rios, with the infant in her arms, were in the back seat. The fifth of whiskey was in the front seat, apparently between the defendant and Frank Rios. Each of them took one drink from the bottle while driving in the downtown area. While driving east they stopped at the intersection of Bowery and Dodge Streets. Defendant started across Dodge Street going east on Bowery. There is evidence that he started so fast tire marks were left on the pavement. There was a car driven by Mr.

Charles F. Gaeta proceeding in the same direction ahead of defendant. This car was passing, or about to pass, to the right of a barricaded excavation in the approximate center of the street. Defendant drove to the left of the barricade on the left-hand side of the street to pass the Gaeta car. A city bus was coming from the east. Defendant turned back to the right-hand side to miss the bus and drove on the right-hand side until he hit a tree. From injuries received in this collision the infant died. All the other occupants of the car were injured and hospitalized. Two police officers testified defendant was intoxicated, two others that he was under the influence of intoxicating liquor from their observations at the scene of the accident and at the hospital. The tree was right next to the curbing and 191 feet east of the barricade. The evidence as to defendant's speed as he passed the barricade varied from 35 to 50 miles per hour. Frank Rios testified defendant said, " 'Let's play chicken with the bus.' " Defendant testified his statement was, "I'm not going to play chicken with the bus." As he turned back to the right-hand side of the street, the evidence for the State is, defendant missed the on-coming bus by as little as three to four feet and as much as 20 feet.

Defendant's evidence is that as he started across the intersection he put the car in low and pushed the accelerator to the floor. As he saw the bus, barricade, and the Gaeta car ahead of him, he put the car in drive and let up on the accelerator. The car did not slow down, he pumped the accelerator slightly to see if it was coming back, and then realized something was wrong, that he did not have control over the speed as he passed to the left of the barricade and turned back to the right-hand side in front of the bus. The car bounced one way and then another as if the weight was flying all over. He hit the brake and that pulled the steering wheel right out of his hand. He was knocked unconscious when he hit the tree. Defendant testified to repairs having been made on his car prior to the accident. A repairman testified to examining defendant's car after the collision and gave his opinion that from the nature of the repair previously made to the brakes and the present condition of the car, the car would swerve to the right when the brakes were applied, the

amount of the swerve would depend on how hard the brakes were applied, and the unresponsive accelerator was caused by a linkage problem in the automatic choke. He testified to the lifeless condition of the shock absorbers, and that the throttle not returning, with improper shock absorbers, the sudden application of brakes as installed could cause a sharp turn to the right and loss of control of the car.

Defendant's attending physician at the hospital testified defendant was not intoxicated, but he could not truthfully say "whether he was under the influence of intoxicating beverages from my observations of him [defendant] at that time."

Defendant urges for reversal the trial court erred in rejecting evidence, in its remarks to defendant's counsel, in receiving opinion evidence of police officers, and in giving and failing to give instructions.

I. On cross-examination of the child's mother, defendant's counsel asked her if in her opinion her husband, Frank Rios, was intoxicated at the time of the accident. This was objected to as not proper cross-examination, and the objection sustained. A second question, "Did he appear to you to then be intoxicated?", was asked and the same objection made and sustained. An offer of proof was made at the next recess on this matter. It was objected to in part as follows, "Such offered testimony is not cross-examination and has no place whatsoever in the record at this time." The objection was sustained.

Later Mrs. Beulah Gerot, the deceased child's maternal grandmother, was called by the State. On cross-examination defendant's counsel asked Mrs. Gerot if in her opinion defendant was in an intoxicated condition at the time she saw him, between 4:30 and 5 at the Rios trailer. An objection that it was improper cross-examination was made and sustained. Defense counsel then asked, "Did he appear to be in an intoxicated condition? Did he appear to be under the influence of intoxicating liquor? Did it appear to you that he was speaking under the influence of intoxicating liquor?" The same objection was made and sustained to each question. The court then admonished defense counsel and stated if counsel wished to make a proffer of

these matters he would be given an opportunity to do so. Counsel then asked the witness, if her son-in-law, Frank Rios, appeared to be in an intoxicated condition at that time. Again the same objection was made and sustained. The court again admonished counsel stating it did not want to do anything that would prejudice the defendant's rights but counsel's conduct was bordering on contempt. Counsel apologized, and then asked, "* * *, did it appear to you that your son-in-law, Frank Rios, was under the influence of intoxicating liquor?" The same objection was made and sustained, and the court directed the interrogating counsel for the defense to appear at ten o'clock the following Monday morning to show cause why he should not be punished for contempt. The defense then made a proffer of the witness' testimony out of the presence of the jury. He asked the witness five questions directed to whether the defendant and Frank Rios were in an intoxicated condition, did they appear to the witness to be under the influence of intoxicating liquors, and were they under the influence of intoxicating liquors. The witness was not allowed to answer, the reason is not clear from the record. Offers of proof were then made that the witness if allowed to answer would testify that defendant was neither in an intoxicated condition nor did he appear to be under the influence of intoxicating liquor, and that Frank Rios was intoxicated and appeared to be under the influence.

◼ Defendant claims it was error to restrict the cross-examination of Mrs. Rios and Mrs. Gerot as above indicated. Without setting the testimony out in detail it is enough to say that in their direct examination neither witness remotely touched on the subject of the defense inquiries. They were clearly outside the scope of direct examination. It was within the sound legal discretion of the trial court. State v. Sedig, 235 Iowa 609, 615, 616, 16 N.W.2d 247; State v. Sampson, 248 Iowa 458, 461, 462, 79 N.W.2d 210; State v. Coleman, 226 Iowa 968, 974, 285 N.W. 269; and citations in each of these authorities.

◼ Defendant urges the right of cross-examination should be extended liberally. This is true, but it does not extend to matters not touched on in direct examination where the inquiries on cross-examination do not touch on the witness' credibility,

bias, ill will, hostility, or interest in the lawsuit. State v. Rowe, 238 Iowa 237, 242, 243, 26 N.W.2d 422; State v. Christy, 198 Iowa 1302, 1305–1308, 201 N.W. 42; and State v. Harvey, 130 Iowa 394, 399, 400, 106 N.W. 938. In addition to the last cited cases, defendant cites Eno v. Adair County Mutual Insurance Assn., 229 Iowa 249, 294 N.W. 323. In the Eno case we point out the difference between the English rule, allowing cross-examination on the whole case, and the Federal or American rule limiting cross-examination to facts and circumstances connected with the direct examination, i.e., bringing out the qualifying circumstances, and to matters testing the credibility of the witness. And it is pointed out the cross-examining party may make the witness his own. There is no error in the limiting of the cross-examination of these two witnesses.

■ II. Defendant urges prejudicial error in the remarks of the court to defense counsel during his cross-examination of Mrs. Gerot as above pointed out, and on the court's admonition made during defendant's cross-examination of the first State witness. The admonition simply was, "Both sides are taking too much time with repetition here, and it is going to precipitate a night session if you don't start moving along." This was directed to both prosecution and defense. Prejudice to neither appears. The trial court not only has the right but the duty to reasonably expedite the trial. See annotation, 62 A. L. R.2d 166, 237.

As to the matters occurring during the cross-examination of Mrs. Gerot, we cannot do better than to quote Weaver, J., in State v. Drake, 128 Iowa 539, 540, 541, 105 N.W. 54, 55:

"We cannot from the record before us say the censure was unmerited. * * * But, when a ruling has once been made and record secured, it is the duty of counsel to submit and seek his remedy by the orderly methods of appeal. If he is unwilling to do so, and persists in attempting to override the rulings against him, he is in no position to complain if his conduct calls forth the expressed disapprobation of the court."

■ In the instant case counsel persisted in the same line of questioning after he had been admonished and the court had offered him an opportunity to make a proffer out of the presence of the jury. There was little else the court could do.

Defendant cites in support of the error claimed, State v. Stowell, 60 Iowa 535, 15 N.W. 417, wherein the trial court stated the prosecuting witness can neither design nor fabricate evidence; State v. Moon, 167 Iowa 26, 35, 41, 148 N.W. 1001, wherein the trial court stated one of the propositions to be proved by the State had been sufficiently proved and in ruling on evidence so phrased the ruling as to assume other like crimes by the defendant; and State v. Peirce, 178 Iowa 417, 436, 159 N.W. 1050, where the effect of the court's remark was to charge one of defendant's counsel with tampering with witnesses. In each of these cases the trial court made an erroneous statement of law bearing on a vital issue to be decided by the jury. Nothing of that kind happened here.

III. Defendant offered Mrs. Gerot as his witness. Objection was made by the State on the grounds she had violated the order of court excluding all witnesses from the courtroom until after they had testified. This objection was sustained by the trial court. The order excluding the witnesses for the State and defendant had been made at the start of the trial in response to motions to exclude the other's witnesses by both sides. The witnesses were not ordered not to communicate with or discuss the case with other witnesses but they were merely excluded from the courtroom until after they had testified. We have discussed the enforcement of such an order in In re Will of Smith, 245 Iowa 38, 41–46, 60 N.W.2d 866. The purpose of such a rule is stated at page 42 of 245 Iowa, page 869 of 60 N.W.2d, as follows: "* * * to lessen the danger of perjury, or at least of a suggestion to following witnesses of what their testimony should be to correspond with that previously given; to put each witness on his own knowledge of the facts to which he testifies rather than to have his memory refreshed, even guided, and his testimony colored by what has gone before."

We there held the trial court has a reasonable discretion in disqualifying a witness who has violated an exclusionary order, and stated it must be expected this discretion will be exercised in a spirit of fairness and so that it will not unjustly deprive a litigant of helpful testimony. In holding the court there did

not abuse its discretion we said at page 45 of 245 Iowa, pages 870, 871 of 60 N.W.2d: "* * * we think the showing the witness was in the courtroom after counsel knew she was to be a witness supports the trial court's position, at least to the point where we cannot say it went beyond its discretion."

Before proceeding further, it is necessary to determine whether the witness, Mrs. Gerot, was qualified to testify as shown by the record presented. The State urges no prejudicial error was committed in disqualifying Mrs. Gerot as a witness because no foundation was laid for her testimony on whether defendant was intoxicated or appeared to be in an intoxicated condition in that it was not shown she had observed him sufficiently to be competent to so testify.

In In re Will of Smith, supra, at page 47 of 245 Iowa, pages 871, 872 of 60 N.W.2d, we point out it is necessary that an offer of proof must generally be made by one who offers testimony to which objection is sustained. In the instant case an offer was made. But, in the Smith case we also point out that it is not only necessary that he show what evidence he would have introduced but the burden is on him to show the competency, relevancy and materiality of the evidence when he offered it, and we cannot speculate it might have been made competent by some later development.

A witness who has observed a person may express an opinion whether he is intoxicated without first stating the facts on which the opinion is based. State v. Helgerson, 247 Iowa 651, 655, 656, 75 N.W.2d 227; Bohnsack v. Driftmier, 243 Iowa 383, 395, 52 N.W.2d 79; and State v. Wheelock, 218 Iowa 178, 185, 254 N.W. 313. But such opinion must be based on observation. And the record must show the witness had a reasonable opportunity for observation to be competent. State v. Pearce, 231 Iowa 443, 444, 1 N.W.2d 621.

At the time the court disqualified Mrs. Gerot for violation of the exclusion order defendant offered to prove the same facts as contained in his previous offer made at the time the witness' testimony was rejected on cross-examination. The question propounded included this, "between 4:30 and five o'clock p.m. on October 10, 1960, when you testified on direct examination that

you had conversation with and observed the defendant," and, "if you have an opinion * * *." Defendant offered to show the witness would have stated she had an opinion as to each man and that her opinion was defendant was not and Frank Rios was intoxicated at that time. The witness testified on direct examination that she came to her daughter's trailer at 4:30 p.m. That they, the boys, defendant, Frank Rios, and Thomas Glick, came out of the trailer, "* * * they says, 'Hi' to me, but then I went to talking to my daughter and asked her if she wanted to go uptown with me." She stated she had seen defendant a couple of times before that and, "I didn't visit with them because I was in a hurry to get uptown. * * * Oh, I left there, it wasn't five o'clock yet." On cross-examination she answered "yes" to these three questions: "You state you saw the defendant James Musack at the trailer?" "And exchanged hellos?" "But you spoke to him and observed him at that time, didn't you?" In response to whether defendant had examined her car she answered, "I guess he did, but I didn't pay no attention, I was talking to my daughter."

We do not think the record discloses Mrs. Gerot had sufficient opportunity to observe the defendant with relation to his state of intoxication or lack thereof. She merely states they spoke or exchanged hellos and that she observed him. Though she was at the trailer for something less than a half hour it is not shown she observed the defendant or her son-in-law other than when they said "Hi". According to her statements she did not pay attention to them but to conversing with her daughter. To be competent to testify as to the condition of a person, a showing should be made the witness observed the person's condition with the condition in mind and for a sufficient length of time to form an opinion. No prejudicial error appears in disqualifying Mrs. Gerot as a witness.

IV. Defendant contends it was error to allow the police officers to testify to defendant's condition of intoxication because Mrs. Gerot was not allowed to testify. The record simply shows the officers were properly qualified to so testify and were not disqualified for any reason. There is no merit in this claim.

V. Error is claimed in the giving of Instruction No.

114

12 setting forth the duty to drive on the right-hand side of the street and the speed limit. As pointed out there was evidence of speed in excess of the speed limit of 25 miles per hour in a residential district and that defendant was on the left-hand side of the street as he drove around the barricade. The instruction was entirely proper.

 VI. In his eighth assignment of error defendant contends Instructions Nos. 17 and 18 were erroneous. However, he does not argue this assignment and it is therefore deemed waived. State v. Walters, 244 Iowa 1253, 1260, 58 N.W.2d 4, and citations. We have carefully examined the instructions and find them entirely proper.

 VII. Defendant's ninth assignment of error is that the court refused to give instructions requested by him. The requested instructions are not before us. They are not included in the record, the amendment thereto, or the clerk's transcript. There is nothing before us upon which to base a decision. State v. Johnson, 252 Iowa 1321, 1323, 109 N.W.2d 625, 626.—Affirmed.

All JUSTICES concur.