STATE OF IOWA, appellee, v. EDWARD CHARLES ALLISON, appellant.

No. 52146.

(Reported in 147 N.W.2d 910)

JANUARY 10, 1967.

REHEARING DENIED MARCH 7, 1967.

Janss, Dreher, Wilson & Adams and Yale H. Iverson, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, David A. Elderkin, Assistant Attorney General, and Ray A. Fenton, of Des Moines, County Attorney, for appellee.

BECKER, J.—Defendant was convicted of robbery with aggravation. He appeals and assigns several errors. The State's evidence developed the following facts.

Mr. and Mrs. Royce Gale own the Hiram's Country Store in Des Moines. On October 1, 1965, at 9 p.m. closing time they were robbed by two masked bandits. Each was carrying a gun and a blackjack. When the robbers entered the store it was occupied only by the owners and one employee, Danny Warren.

The three people were directed to the rest room in the back of the store. Shortly thereafter a customer entered the store. He too was taken back to the rest room. When he was brought back to where the store owners and employee were being held both robbers were with him and both had removed their masks. Mr. Gale and Danny Warren saw the unmasked robbers at that time. Additionally, Mr. Warren was able to see out through some holes in the rest room wall. He testified that he saw defendant cut the telephone wires in the store.

The bandits told the four prisoners to remain in the rest room for ten minutes and left. Subsequent computation showed that some $1800 left with them. The people came out of the rest room very shortly and summoned police.

On October 13, 1965, Mrs. Gale and Danny Warren were asked to come to the police station. At that time defendant and another man were taken through a room in which the two witnesses were sitting to another room where the police talked to these men. They were then taken back out through the same room. Mrs. Gale had not seen the robbers without masks on but identified defendant as the shorter of the two men who had robbed them on October 1. This identification was on the basis of the man's talk, walk and size. Danny Warren who had seen the robbers without masks also identified defendant as the shorter of the two robbers. Both Danny Warren and Mr. Gale identified defendant at trial as one of the robbers.

I. Defendant's first assignment of error involves the police station identification. He urges that since there was no showing that defendant had been warned of his constitutional right to counsel at the time the witnesses observed police officers talking to defendant, evidence of identification by the two witnesses at the police station should have been suppressed. Escobedo v. Illinois. 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694, are cited as authority for this position.

The record is completely silent as to any statements made by defendant. The State's reference to the spoken word by defendant went only to the basis of the two witnesses' identification by seeing and hearing defendant at the police station on October 13. Nothing in either Escobedo or Miranda prohibits a reasonable identification procedure such as we have here. Of course. the effect of the Miranda decision is not binding on this court in this appeal in any event because the case was tried before June 13, 1966, Johnson v. State of New Jersey, 384 U. S. 719, 86 S. Ct. 1772. 16 L. Ed.2d 882. We note also there was no motion to suppress and no objection to this evidence on this basis until defendant's motion for new trial.

II. Defendant's second assigned error involves sequestration of witnesses. On defendant's motion the court ordered the exclusion and separation of all witnesses. Defendant used a picture of the interior of the store, defendant's Exhibit No. 2, in interrogating Mrs. Gale. The county attorney used this exhibit

in the courtroom during a noon recess while he conferred with Danny Warren before placing him on the stand. Defendant contends that this was prejudicial error and objected promptly he became aware of the procedure.

We think defendant claims too much for the order of sequestration. The record does not disclose that the witnesses were ordered not to communicate with trial counsel or with each other. see State v. Musack, 254 Iowa 104, 111, 116 N.W.2d 523.

■ The right of counsel on either side to consult with witnesses before examining them as witnesses is a valuable right and should not be denied except by specific order of court for good reason. It should not be denied by implication. "Generally, the time, place and manner in which the prosecuting attorney interviews his witnesses is a matter within his own discretion." 23 C. J. S., Criminal Law, section 1025, page 1104.

"The party calling witnesses, or his counsel, is not, in general, deprived of the right to consult with them in a proper manner by the fact that they have been placed under the rule, in the case either of witnesses for accused or for the prosecution. So, the trial court may, in the exercise of its discretionary power, permit consultation between counsel and witnesses after the rule has been invoked and before the witnesses have been placed under the rule, or even after the witnesses have been placed under the rule; the propriety of the trial court's ruling on such a request must necessarily be based on the particular facts of each case." 23 C. J. S., Criminal Law, section 1010(b), page 1077.

The trial court did not feel that the sequestration order had been violated. We agree. The court's discretion was not abused. See State v. Agee, 257 Iowa 1345, 1348, 136 N.W.2d 419, 420; State v. Musack, 254 Iowa 104, 116 N.W.2d 523; In re Will of Smith, 245 Iowa 38, 60 N.W.2d 866.

■ III. The record reveals that at two recesses the court allowed the jury to leave the box without giving them the familiar admonition required by sections 780.21 and 780.22, Code of Iowa, 1966. The court did admonish the jury at the end of the first half day, the jury having been selected during the afternoon. This admonition was apparently in proper form

since defendant does not complain on that score. The court also admonished the jury at a short recess the morning of the second day, again at the noon recess. At the short recess at 3:15 p.m. of the second day of trial the court neglected to admonish the jury but again admonished them before adjourning that evening. The next morning after some testimony, defense counsel asked for a recess until 1:30. This recess was granted but the record fails to show an admonition. When the jury reconvened they were again admonished and dismissed until the following day when they heard final arguments.

Apparently no one noticed the failure to admonish, or remind the jury of the admonishment, until the case was over and the transcript prepared. The omissions were then used as a basis for motion for new trial. Without attempting a fine distinction between "adjournment" as used in the statute and recess during a trial day, we would observe that in order to grant a new trial on the basis of this error we must know or be able to strongly presume that prejudice occurred. Under the circumstances here we find that the strong presumption is that the error was harmless, State v. Jensen, 245 Iowa 1363, 66 N.W.2d 480.

IV. Defendant next charged the county attorney with improper final argument in commenting on the defendant's failure to testify. This error would require a new trial if the prosecutor was in fact guilty of such tactics. Griffin v. State of California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106; State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518; State v. Beshears, 258 Iowa 389, 138 N.W.2d 886; State v. Osborne, 258 Iowa 390, 139 N.W.2d 177, and State v. Barton, 258 Iowa 924, 140 N.W.2d 886; State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444.

This complaint requires a short review of the trial development. Defendant had given notice of intent to claim alibi as a defense, section 777.18, Code, 1966. In furtherance of this matter he had subpoenaed two witnesses. During trial he asked for a recess apparently in order to locate these witnesses. After the noon recess the witnesses were not present and defendant thereupon rested his case. On the other hand, it was apparent from the testimony that Mr. Yeager, the cus-

182

tomer who had come into the store during the robbery, might well have been used by the State. Mr. Yeager did not testify.

In final argument defense counsel commented at some length on the State's failure to produce Mr. Yeager. In rebuttal the prosecutor said: "He mentions Mr. Yeager. Unfortunately, Mr. Yeager is not the only person connected with this case who has not taken the witness stand. And like Mr. Allison knows, and as you have seen so many times, and I think even one time in the presence of the jury, the Court indicated, 'Mr. Iverson, if you need any help in locating any witnesses, you let me know.'"

Defendant argues that these remarks constituted a violation of his constitutional rights under the rule announced in Griffin v. State of California, supra. We cannot agree.

■ The prosecutor did not directly mention defendant's failure to testify. We think that a strained and forced construction is necessary to conclude that the argument was aimed at indirectly accomplishing the same end. The fair purport of State's argument in this regard was to call attention to defendant's failure to call alibi witnesses as he had indicated during trial he intended to do. As the arguments developed this answering argument by the State was not a violation of the rule laid down in Griffin v. State of California. Comment on failure of defendant to call witnesses available to him has been held fair argument, State v. Peirce, 178 Iowa 417, 159 N.W. 1050; State v. Boyd, 199 Iowa 1206, 200 N.W. 205; State v. Katz, 241 Iowa 115, 40 N.W.2d 41. This rule is still sound, particularly where, as here, the reference came in rebuttal to defendant's comment on the State's failure to call witnesses available to it.

V. Defendant also assigns error growing out of the foregoing argument of the prosecutor on the ground that such remarks were outside of the record. The statement was made: "Mr. Iverson, if he wanted you folks to have Mr. Yeager testify, could just as well subpoenaed him here and have him testify for you folks."

■ Defendant cites numerous cases where this court has held that overzealous prosecutors "went too far" in final argument and reversed convictions on that ground. This is not such

a case. While the prosecutor here might well have refrained from further comment on the absence of Mr. Yeager (in view of the subpoena returned unserved), the comment does not appear to be so onerous as to require reversal.

 The trial court did not feel that prejudicial error occurred. "In State v. Wheelock, 218 Iowa 178, 182, 254 N.W. 313, 316, we said: 'The matter of granting a new trial for alleged misconduct of counsel and the many incidents that happen in the trial of a case is peculiarly within the discretion of the trial court.' " State v. Jensen, 245 Iowa 1363, 1367, 1368, 66 N.W.2d 480.

See also State v. Warren, 242 Iowa 1176, 47 N.W.2d 221; Connelly v. Nolte, 237 Iowa 114, 21 N.W.2d 311; and State v. Cooper, 169 Iowa 571, 151 N.W. 835.

 VI. Finally defendant assigns error on the basis of the county attorney's remark: "There is no question in my mind that this person that was sitting here in the courtroom charged with this crime is one of the two fellows that were in there on the evening of October 1, 1965." Again no objection was made at the time of argument or later. This assignment is raised for the first time in this court. This failure to object at the time the claimed error is committed precludes successful objection here.

We recently considered this matter of expression of opinions of guilt by the prosecutor in State v. Schmidt, 259 Iowa 972, 145 N.W.2d 631. In that case objection by defense counsel was so prompt that the prosecutor did not finish his sentence. We held that there was no prejudicial error.

A review of our prior cases on this subject indicates no instance where such argument has been the basis for reversal. In State v. Walker, 192 Iowa 823, 838, 185 N.W. 619, the prosecutor is quoted: "Gentlemen of the jury, you know Charles Walker is guilty. I know he is guilty and deep down in his heart Mr. Remley knows he is guilty."

This court's comment on such argument follows: "The language of the county attorney in his reply argument has been the subject of criticism by this court, but in *State v. Nagel,* 185 Iowa 1038, similar language was held not sufficient ground for

a reversal. We do not approve of the language used by the county attorney in this case, and a note of warning should be sounded occasionally that prosecutors may keep within the limitations defined by Code section 5484. The argument in this case to which exception is taken is dangerously close to the border line."

While we hold that the trial court's discretion was properly exercised in refusing a new trial, we quote the general rule on this matter from 23A C. J. S., Criminal Law, section 1104, page 193: "As a general rule, it is improper for the prosecuting attorney to express his personal opinion or belief in the guilt of the accused, unless it is apparent that such opinion is based solely on the evidence, and not on any reasons or information outside the evidence." See also annotation 50 A. L. R.2d 766 and People v. Kirby, 4 Mich. App. 201, 144 N.W.2d 651.

VII. The State has properly pointed to defendant's failure to make timely objection to the errors considered in Divisions IV, V and VI. We agree that such lack of timely objection is fatal to defendant's position in each area. Our election to consider each error on its merits does not change the fact that the trial court and the opponent are entitled to timely and intelligent objections to the end that the trial may be properly conducted. 24 C. J. S., Criminal Law, section 1669, page 1050; State v. Mart, 237 Iowa 181, 186, 20 N.W.2d 63.–Affirmed.

All JUSTICES concur.